LINDA FOWLES, administratrix, *vs.* JOHN W. LINGOS.

No. 89-P-408.

Plymouth. December 14, 1990. - April 10, 1991.

Present: DREBEN, KASS, & GREENBERG, JJ.

*Limitations, Statute of. Negligence,* Wrongful death, Doctor. *Due Process of Law,* Statute of limitations. *Constitutional Law,* Equal protection of laws. *Practice, Civil,* Summary judgment.

A wrongful death action commenced in 1986, more than six years after the date of death but only four months after the deceased's administratrix learned of the cause of action, was governed by the three-year statute of limitations set forth in G. L. c. 229, § 2, as then effective, and as construed in *Pobieglo* v. *Monsanto Co.,* 402 Mass. 112 (1988). [436-438]

The plaintiff in a wrongful death action did not demonstrate that the defendant physician's silence constituted a fraudulent concealment of facts that would constitute the cause of action so as to toll the statute of limitations. [438-442]

CIVIL ACTION commenced in the Superior Court Department on October 30, 1986.

The case was heard by *William H. Carey,* J., on a motion for summary judgment.

*Michael J. Traft* for the plaintiff.

*Douglas N. Perlo* for the defendant.

DREBEN, J. On May 20, 1980, while on the operating table for gall bladder surgery, Manuel L. Fernandez died. The surgeon told his daughter, Linda Fowles, that her father had suffered a heart attack. The anesthesiologist for the operation was the defendant, John W. Lingos. In June, 1986, Linda Fowles read an article in the Boston Globe newspaper from which she learned that an investigating anesthesiologist had concluded that in her father's case and in two others, the defendant's "care was negligent, with disastrous consequences."

In this action filed against the defendant on October 30, 1986, the plaintiff alleged negligence and gross negligence. The defendant pleaded the statute of limitations, G. L. c. 229, § 2, which, at the time the action was brought, provided that a wrongful death action shall be commenced "within three years from the date of death . . . ." G. L. c. 229, § 2, as amended through St. 1979, c. 164, § 1.[1] On October 27, 1988, after what appears to have been extensive discovery,[2] the motion of the defendant for summary judgment based on the statute of limitations was allowed by a judge of the Superior Court. He ruled that there was no genuine issue of fact and that the case was controlled by *Pobieglo* v. *Monsanto Co.*, 402 Mass. 112 (1988), and not, as the plaintiff had contended, by *Jenkins* v. *Jenkins*, 15 Mass. App. Ct. 934 (1983). We affirm the judgment.

1. In *Pobieglo* v. *Monsanto Co.*, 402 Mass. at 117-118, the court responded to questions certified to it from the United States District Court for the District of Massachusetts "involving the applicability of the so-called discovery rule to claims for wrongful death and conscious pain and suffering arising from exposure to workplace chemicals." *Id.* at 113. The court determined that "where the Legislature has specifically provided that claims for wrongful death must be brought within three years from the date of death, it would be inappropriate . . . to vitiate that legislative determination and apply a discovery rule to claims brought pursuant to

---

[1]The plaintiff does not argue that G. L. c. 260, § 4, applies; her entire argument as stated in her brief is based on the premise that the "wrongful death statute, not the medical malpractice statute (G. L. c. 260, § 4) . . . controls."

[2]Docket entries show that the plaintiff propounded two sets of interrogatories to the defendant, requested production of documents, and noticed depositions of the hospital administrator and the decedent's surgeon. Goddard Hospital and one Dr. Robert Becker obtained a protective order, the nature of which is not disclosed. Although not noted on the docket, the record appendix indicates that the defendant was also deposed. The defendant served interrogatories on the plaintiff, requested the production of documents, and noticed depositions of the plaintiff, Frank Fernandes, and Caroline Barretto, and obtained an order for records of the decedent at Goddard Memorial Hospital, Brockton Hospital, and Joslin Clinic.

G. L. c. 229, § 2."³ *Id.* at 117-118. To delay accrual of the action until discovery "would be in clear contravention of the legislative directive that the period of limitation runs from the date of death." *Id.* at 116.⁴

Although the plaintiff attempts to distinguish *Pobieglo* on the ground that in that case no physician-patient relation was involved, we agree with the motion judge that the holding, which was based explicitly on the statutory "nonaccrual type" language of c. 229, § 2 (*id.* at 117 n.6), applies to the case at bar.⁵

The plaintiff also argues that *Pobieglo* is inapposite because her constitutional claims — that the applicability of the discovery rule in personal injury but not in wrongful death actions is a denial of due process and of equal protection — were not there discussed. The constitutional arguments are, however, also put to rest by *Pobieglo's* statement

---

³Policy considerations led the court also to deny application of the discovery rule to actions brought by a decedent's representative for conscious suffering. *Id.* at 119-120.

⁴Subsequent to the decision in *Pobieglo* and to the entry of summary judgment in this case, G. L. c. 229, § 2, was amended by St. 1989, c. 215, § 1, which added the following sentence: "An action to recover damages under this section shall be commenced within three years from the date of death, or within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action . . . . " The plaintiff does not argue that the amendment applies to this case. See *Baldassari* v. *Pub. Fin. Trust*, 369 Mass. 33, 43 (1975) (new statute "does not serve to revive actions barred before its effective date").

Also subsequent to the bringing of this action, St. 1986, c. 351, § 30, amending G. L. c. 260, § 4, was enacted, providing in relevant part: "[I]n no event shall any [medical malpractice] action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body." Section 41 of c. 351 provides that the quoted section applies only to "claims arising from acts of malpractice . . . which . . . occur on or after November first, nineteen hundred and eighty-six."

⁵In *Pobieglo*, at 116, the court pointed out that "the discovery rule grew out of the need to determine when a cause of action 'accrued.' " Unlike claims brought under c. 229, § 2, which specifies that the limitation period runs from the date of death, "[w]hen the Legislature limits the time within which suit can commence from the date of accrual, it leaves to the court the determination of the precise meaning of the term accrued."

(referring to *Grass* v. *Catamount Dev. Corp.*, 390 Mass. 551 [1983]) that the "Legislature might reasonably choose to put [a] wrongful death claimant on [a] different footing from one claiming injury." *Id.* at 117. Cf. *Gallant* v. *Worcester*, 383 Mass. 707, 714 (1981); *Grass* v. *Catamount Dev. Corp.*, 390 Mass. at 553. For the nature of review of such constitutional claims, see *Klein* v. *Catalano*, 386 Mass. 701, 707 (due process), 715 (equal protection) (1982).

2. Our inquiry is not at an end, however, as the plaintiff correctly points out that *Pobieglo* did not involve G. L. c. 260, § 12, a provision which tolls the statute of limitations when a defendant "fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it . . . ." That statute may, in some circumstances, apply to G. L. c. 229, § 2, the wrongful death statute. *Jenkins* v. *Jenkins*, 15 Mass. App. Ct. at 935.

The complaint did not allege fraudulent concealment (perhaps because the statute of limitations is an affirmative defense, Mass.R.Civ.P. 8[c], 365 Mass. 750, [1974]; see also Mass.R.Civ.P. 9[b], 365 Mass. 751 [1974]), and the matter was first raised by the plaintiff in response to the defendant's motion for summary judgment.[6] The motion was filed on May 24, 1988, and not heard until October 27, 1988, thus giving the plaintiff ample time for additional discovery, which, the docket suggests, she pursued. Despite the extensive discovery in this case, see note 2, *supra*, the only material presented by the plaintiff in opposition to the motion for summary judgment based on the statute of limitations was her affidavit, to which the Boston Globe article was appended, and a portion of the deposition of the defendant.

The affidavit stated that the plaintiff was informed by the surgeon that her father had died of a heart attack on the

---

[6]Since the plaintiff was not required to anticipate the defense of the statute of limitations, she would no doubt be given opportunity to amend the complaint to show facts that would toll the statute. See *Clute* v. *Davenport Co.*, 584 F. Supp. 1562, 1579 (D. Conn. 1984); 5 Wright & Miller, Federal Practice and Procedure § 1270, at 426, Anticipation of affirmative defense (2d ed. 1990). Accordingly, we consider the issue of fraudulent concealment even though not pleaded.

operating table and that she first learned from the Globe article that the defendant had been investigated about the care he had rendered as her father's anesthesiologist. The affidavit also attached a Globe article reporting that Dr. Jeffreys, an investigating anesthesiologist, thought the defendant negligent in the decedent's case, although the chief of anesthesiology at Goddard Hospital had found him not at fault. The article also reported that the defendant had been suspended by Goddard Hospital and, when he sued to get his job back, he and the hospital had in 1982 reached a settlement which resulted in the defendant not returning to the hospital.

The defendant's deposition indicated that Dr. Jeffreys made his investigation at the hospital at the request of the board of trustees, not the medical staff, and that the defendant had never spoken to Dr. Jeffreys. He had learned of Dr. Jeffreys's findings and recommendations from the chief of anesthesia and the chief of surgery. They said Dr. Jeffreys had commented "that it was an old-fashioned type of anesthesia, and [the defendant] did not act quickly enough . . . ."[7] Jeffreys also recommended that the defendant be discharged. The defendant stated in his deposition that he told the chiefs of anesthesiology and surgery that what Jeffreys had said about Fernandes was "altogether wrong," that he did not see how they could go along with Dr. Jeffreys, that he had given anesthesia for forty years at the hospital, and that "even the medical staff wouldn't go along with them."

No objection was made to the form of the material filed. See Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974) (affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). If a party does not move to strike the defective portion of an opponent's affidavit, a judge may, in

---

[7]The defendant's deposition continues ambiguously "and I tried to tell him I wasn't in the room." It is not clear whether this means that the defendant tried to tell the chiefs of anesthesiology and surgery that he wasn't in the room.

his discretion, rely on the defective portions. See *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985). We do not know whether the judge relied on the affidavit and its attachments, but even if the materials were properly before the judge, see *id.*, and were construed in the light most favorable to the plaintiff, the party opposing summary judgment, *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982), we hold that they failed to establish a genuine issue of fact.

There is no claim or evidence that the defendant made any misrepresentation or took any steps with the intent fraudulently to conceal the cause of death. The statements of the surgeon, even if known to the defendant (and there is nothing suggesting such knowledge), are not imputable to the defendant.

To sustain her claim the plaintiff must, therefore, show that the defendant's silence alone constituted a fraudulent concealment. "Ordinarily mere silence concerning the cause of action or failure to inform the plaintiff of the facts upon which her cause of action rests is not a fraudulent concealment within the meaning of [c. 260, § 12]." *Maloney* v. *Brackett*, 275 Mass. 479, 484 (1931). See also *Malapanis* v. *Shirazi*, 21 Mass. App. Ct. 378, 386 n.8 (1986).

In *Maloney* v. *Brackett*, *supra*, the plaintiff sought to toll the statute of limitations by arguing that two physicians had fraudulently concealed a cause of action for negligence based on their performing an unnecessary operation. The court stated at 484:

> "If a defendant is a deliberate wrongdoer and is also charged with the duty to disclose his wrong to the plaintiff, the rule that a plaintiff is bound by knowledge of facts which might have been learned upon inquiry may not apply. [Citations omitted.] But the failure of a doctor to disclose a cause of action to a patient could not be found to be a breach of his professional duty *without evidence that he knew or believed that a cause of action existed*, and we discover no evidence that either defendant knew or believed that he had performed or assisted in the performance of an unnecessary operation, and

[no evidence] of such a violation of professional duty or concealment of facts as could establish a fraudulent concealment of the cause of action within the meaning of the statute." (Emphasis supplied.)

For some purposes (e.g., treatment) the doctor-patient relationship is a fiduciary one, cf. *Warsofsky* v. *Sherman*, 326 Mass. 290, 292 (1950), and there may be some circumstances where there is a duty to disclose a cause of action. Here, as in *Maloney* v. *Brackett, supra*, there is no evidence to show either that the defendant knew or believed that his administration of anesthesia was negligent or that he concealed facts which would establish a fraudulent concealment of the cause of action within the meaning of G. L. c. 260, § 12.

A plaintiff does not establish fraudulent concealment within the meaning of G. L. c. 260, § 12, "by showing only that there is a difference of opinion concerning the applicable standard of care," see *Geisz* v. *Greater Baltimore Med. Center*, 313 Md. 301, 330 (1988), or by showing that a physician has failed to divulge some adverse criticism. To read into G. L. c. 260, § 12, a duty to disclose in such circumstances would not only increase immeasurably the risks undertaken by physicians, but would also undercut the policy of having peer reviews, and the policy of confidentiality of such reviews.[8]

The plaintiff cites to *Bourassa* v. *LaFortune*, 711 F. Supp. 43 (D. Mass. 1989), a case denying summary judgment to an anesthesiologist on the ground that the patient-physician relationship gives rise to a duty to disclose a cause of action if the doctor knew or believed that one existed. We do not know what material concerning that issue was before the judge in *Bourassa*. What was here presented to show fraudulent concealment was insufficient, and the record before the motion judge was an appropriate one on which to grant sum-

---

[8]General Laws c. 111, § 204(a) (inserted by St. 1986, c. 351, § 9), which became effective October 1, 1986, is a legislative expression of that policy.

mary judgment on the question whether the particular stat-
ute of limitations had run. See *Malapanis* v. *Shirazi*, 21
Mass. App. at 383. To the extent, if any,[9] that the *Bourassa*
case is inconsistent with our views, we do not follow it.

*Judgment affirmed.*

---

[9]The facts in this case are distinguishable from those in *Bourassa.* There
it was alleged that the defendant anesthesiologist negligently placed an en-
dotracheal tube in the patient's esophagus.