**Robert K. HUGHES, Administrator of the Estate of Joanne P. Hughes, Plaintiff,**

v.

**AMERICAN REGENT LABORATORIES, Defendant.**

Civ. A. No. 92–11950–H.

United States District Court, D. Massachusetts.

Oct. 30, 1992.

Maureen M. Cushing, Andrew W. Pasquina, Nathan and Pasquina, Salem, Mass., for plaintiff.

John D. Dwyer, Boston, Mass., for defendant.

ORDER RE: MOTION OF DEFENDANT, AMERICAN REGENT LABORATORIES, THAT THE SALEM HOSPITAL BE ORDERED TO PRODUCE, FOR IN CAMERA INSPECTION BY THE COURT, ALL RECORDS RELATING TO JOANNE P. HUGHES, WHO EXPIRED ON THE OPERATING TABLE (DOCKET ENTRY # 7)

BOWLER, United States Magistrate Judge.

On September 25, 1992, defendant American Regent Laboratories ("defendant") filed a motion seeking production of hospital records from Salem Hospital in Salem, Massachusetts in order for this court to conduct an *in camera* review. (Docket Entry # 7). On October 8, 1992, Salem Hospital filed an objection on the grounds that such documents constitute records of a medical peer review committee, entitled to confidentiality under section 204 of Massachusetts General Laws chapter 111 ("section 204"). (Docket Entry # 9).

On October 16, 1992, this court held a hearing, accepted defendant's supplementary memorandum for filing (Docket Entry # 11) and took the motion to produce (Docket Entry # 7) under advisement.

## BACKGROUND

Plaintiff Robert K. Hughes, husband of Joanne Hughes and administrator of her estate, originally filed this wrongful death action in Massachusetts Superior Court. Defendant removed this case to federal court.

As alleged in the unverified compliant, on September 15, 1989, Joanne Hughes, a 53 year old woman, underwent surgery for an elective hysterectomy operation at Sa-

lem Hospital. (Docket Entry # 1). According to the complaint, during the operation, a "nurse anesthetist" intravenously injected Joanne Hughes with an indigo carmine dye, manufactured by defendant. (*Id.*, ¶ 6). She experienced difficulty breathing within one minute of receiving the injection and was pronounced dead 40 minutes later. (*Id.* ¶ 7).

Plaintiff bases his suit on negligence and breach of warranty, claiming that defendant failed to adequately warn and instruct foreseeable users of indigo carmine dye of the dangers of anaphylactic[1] reactions. Joanne Hughes ("decedent") allegedly had an extensive history of drug hypersensitivity.

In conjunction with commencing suit, plaintiff supplied defendant with copies of decedent's medical records obtained from Salem Hospital. On August 14, 1992, defendant served a deposition notice on the Keeper of Records of Salem Hospital ("deponent") seeking to obtain additional records. Defendant noticed the deposition for August 28, 1992, and instructed deponent to bring all records pertaining to: decedent; persons present during the September 15, 1992, operation, and the use of indigo carmine dye at Salem Hospital. (Docket Entry # 7).

By letter dated August 25, 1992, deponent's attorney advised defendant's attorney that the subpoena potentially encompassed medical peer review committee materials protected as confidential under section 204. Deponent produced certain medical records at the August 28, 1992, deposition. Defendant, however, claims the records are incomplete.

Citing a number of deficiencies in the medical records (Docket Entry ## 7 & 11), defendant maintains this court must conduct an *in camera* review of all hospital records in order to determine if Salem Hospital is properly withholding medical peer review committee materials or improperly withholding additional medical records.

By affidavit, Michael J. Geaney, Jr., President of Salem Hospital, states that decedent's death triggered an internal investigation at Salem Hospital as detailed in the affidavit. (Docket Entry # 10, ¶ 5). Salem Hospital's Executive Committee of the Medical Staff, a medical peer review committee within the meaning of section 204, conducted a review of decedent's death. After explaining in detail the internal review procedures employed at Salem Hospital in accordance with sections 203 and 204 of Massachusetts General Laws chapter 111, he avers that the internal reviews were not "routine" but, rather, were part of the proceedings of medical peer review committees. (Docket Entry # 10, ¶ 10).

## DISCUSSION

Section 204 is a "legislative expression" of the "policy of confidentiality of [medical peer] reviews." *Fowles v. Lingos*, 30 Mass.App.Ct. 435, 569 N.E.2d 416, 420 & n. 8 (1991). The statute is clear. Subsection (a) of section 204 ("section 204(a)") states that:

> reports and records of a medical peer review committee shall be confidential and shall not be subject to subpoena or *discovery*, or introduced in to evidence, in any *judicial* or administrative *proceeding*, except proceedings held by the boards of registration in medicine, social work or psychology. [Emphasis Added].

Mass.Gen.L. ch. 111, § 204(a). Subsection (b) of section 204 ("section 204(b)") provides that reports or records obtained from other sources are not privileged merely because such information is submitted to a medical peer review committee. *Beth Israel Hospital v. Board of Registration in Medicine*, 401 Mass. 172, 515 N.E.2d 574, 579 (1987).

By employing the word "shall," section 204(a) is phrased in mandatory language. It expressly applies to discovery in any judicial proceeding. Consequently, section 204(a) bars a "judicial proceeding" undertaken by this court involving a "discovery" matter, i.e., *in camera* review, concerning records of a medical peer review committee.

---

1. An anaphylactic reaction is a severe sometimes fatal allergic reaction to a foreign substance.

Defendant nevertheless attempts to distinguish this case on the basis of section 204(b) and dicta in *Commonwealth v. Choate–Symmes Health Services, Inc.*, 406 Mass. 27, 545 N.E.2d 1167 (1989). In *Choate–Symmes,* the court held that the Board of Registration in Medicine ("the board") could not obtain records of a medical peer review committee in conjunction with a preliminary investigation of a physician's conduct. Rather, the board could only obtain such records when conducting an "adjudicatory proceeding" under Massachusetts General Laws chapter 30A. *Id.* 545 N.E.2d at 1168.

Defendant emphasizes the following language in *Choate–Symmes:*

> The extent to which the documents the hospital did not produce are entitled to protection from disclosure is not argued here. If the board wishes to press its claim of access, and the parties cannot agree on which documents are protected from disclosure, the dispute will have to be resolved.

*Id.* 545 N.E.2d at 1168. By implication, defendant argues that this court must resolve the instant dispute through an *in camera* inspection. In light of the explicit language of section 204, the affidavit from the President of Salem Hospital and this court's review of the hospital records produced, this court is satisfied that further production of hospital records for *in camera* review is both unnecessary and violative of section 204.[2]

Furthermore, to the extent there are gaps in the medical record, defendant may depose the pertinent physicians and medical personnel in order to determine the factual basis of his suit.

### CONCLUSION

In accordance with the foregoing discussion, defendant's motion to produce (Docket Entry # 7) is DENIED.

---

**2.** The dearth of cases construing section 204 indicates that other courts have not intruded on the policy of confidentiality afforded medical peer review committee proceedings.