Connolly, J.
BACKGROUND
On July 14,1993, Stanley W. Howard (Howard) was involuntarily committed to the New England Deaconess Hospital (Hospital) psychiatric ward. On that date, Howard came under the care of the Hospital and the Defendant, Kerry ' L. Bloomingdale, M.D. (Bloomingdale). On Howard’s second day of confine *531 ment, he escaped but was later found and returned to the ward.
On July 22, 1993, Howard was scheduled to have an MRI scan of his brain In a building adjacent to the hospital ward. A medical order was prepared to transport him. His transportation called for an experienced staff person to transport him due to the fact that he was on the highest level of suicidal watch.
Third-party Defendant Sheila [St. Just] Bruce (Bruce) was chosen to escort Howard. Bruce testified in a deposition that she had completed at least two courses designed to teach hospital personnel on how to protect themselves from patients, how to assess a patient as to whether or not the patient was suicidal, and how to restrain patients. Bruce stated that this was the first time that she had been involved in the transportation of a suicidal patient.
Following Howard’s MRI, he broke away from Bruce and went to the top of the Hospital parking garage roof. Howard proceeded to jump off the roof and land on the Plaintiff, John Carr (Carr), who was on the ground below working as a construction employee. Carr subsequently filed suit against Bloomingdale alleging medical malpractice and against the Estate of Stanley W. Howard alleging negligence on the part of Howard. Thereafter, the Estate of Stanley W. Howard commenced a third-party suit against Bloomingdale, the Hospital, Bruce, Dr. Anthony Abrams, Dr. Anthony Weiner, and Christine Fitzpatrick, R.N.
On September 30, 1996, Carr served on the Hospital a Keeper of the Records Subpoena along with a list of the documents it sought to discover. On October 10, 1996, the Hospital responded objecting to Requests Two and Six as privileged material. The only incident report that Carr was provided with was the New England Deaconess Hospital Security Department’s Incident Report. The Hospital, in its response to Request No. 6, would not produce incident reports submitted by two nurses because it claimed that each was protected under the medical peer review privilege. Carr subsequently filed a Motion to Compel the Hospital to produce the records. A hearing was held and the parties agreed that the documents would be reviewed by the judge in camera at a subsequent date. On the date specified for the in camera review, counsel for the Hospital refused to produce the documents for review by the judge claiming that all the documents requested were privileged. The Hospital boldly asserts that its counsel’s and hospital official’s determination of privilege should be absolute, and that no court under Massachusetts law has the power to make an in camera review to determine whether such documents are discoverable. This Court does not believe that the hospital officials’ and their counsel’s decision is beyond review by an independent judiciary.
DISCUSSION
The Hospital objects to both Request No. 2 and Request No. 6 of Schedule A to Carr’s Keeper of the Records Subpoena. Since the Hospital contends that both requests trigger a separate privilege under Massachusetts law, the Court will discuss them separately.
A. Request No. 2
Request No. 2 of Schedule A to Carr’s Keeper of the Records Subpoena seeks to discover the complete personnel file of Bruce.[1] The Hospital objected to this request alleging that records of this type are privileged, and further, that the request was “overly broad, unduly burdensome, [and] seeks irrelevant information.” In support of its contention, the Hospital cites to a general privacy privilege contained in G.L.c. 214, §l(b) which provides that “[a] person shall have a right against unreasonable, substantial or serious interference with his privacy.”
The Hospital’s argument asserts that Carr already has access to, and is in possession of, Bruce’s curriculum vitae which provides extensive information into her employment and educational background. Moreover, the Hospital states that Carr has already had the opportunity to depose Bruce at length as to her educational and employment history. Finally, the Hospital claims that it could subject itself to sanctions pursuant to G.L.c. 149, §52C for any improper disclosure.
Conversely, Carr claims that although the information sought maybe private, the facts of the case dictate that this information should be discoverable. Carr states that Bruce admitted in her deposition that she had completed classes at the Hospital, one of which taught her how to assess whether a patient was suicidal. Moreover, he contends that she testified that this was the first time she transported a suicidal patient off the psychiatric ward and she would not have been able to restrain Howard anyway.
The theory of Carr’s Complaint was that the Hospital was negligent in letting Bruce transport Howard alone even though he was labelled a high suicide risk. According to Bruce’s deposition, evidence exists that she was relatively inexperienced at such tasks. Carr’s request for the entire personnel file of Bruce, although somewhat broad, nevertheless may contain discoverable documents relating to the scope of this case. The Court, by ordering the documents to be produced for an in camera review, was cognizant of the fact that some of the documents contained in Bruce’s personnel file may be privileged or may not be relevant to the present case. In doing so, the Court sought to identify those documents contained in the file which were discoverable without breaching any confidentiality issues. This was the understanding of the parties when they first agreed to an in camera review. The fact that the Hospital now refuses to produce the personnel file due to confidentiality reasons, however, does not sway *532 this Court. Accordingly, the Hospital must produce the documents requested under Request No. 2 of Schedule A to Plaintiffs Keeper of the Records Subpoena for an in camera review by this Court. The Court at that time will make a determination as to what documents are discoverable thereby preserving the confidentiality of any sensitive materials contained in Bruce’s personnel file.
B. Request No. 6
Request No. 6 of Schedule A to Carr’s Keeper of the Records Subpoena seeks, among other things, copies of incident, deviation, or unusual occurrence reports prepared by the Hospital regarding the escape by Howard on July 22, 1993.[2] The Hospital contends that the documents requested are protected under the Medical Peer Review Privilege contained in G.L.c. Ill, §204.
“[T]he proceedings, reports and records of amedical peer review committee shall be confidential and shall not be subject to subpoena or discovery, or introduced into evidence, in any judicial or administrative proceeding . . . and no person who was in attendance at a meeting of a medical peer review committee shall be permitted or required to testify in any such judicial or administrative proceeding . . .” G.L.c. Ill, §204(a). The purpose of the privilege is to “promote the uninhibited expression of professional opinions before a [medical peer review committee] and protect the [medical peer review committee’s] work-product.” Beth Israel Hospital Assoc. v. Board of Registration of Medicine, 401 Mass. 172, 183 (1987). Further, “the privilege .. . was designed to foster aggressive critiquing of medical care by the provider’s peers.” Id. at 182. This privilege, however, is narrow and is limited by G.L.c. 111, §204(b) which provides, in relevant part, that “[d]ocuments, incident reports or records otherwise available from original sources shall not be immune from subpoena discovery or use in any such judicial or administrative proceeding merely because they were presented to such committee in connection with its proceedings." G.L.c. Ill, §204(b). General Laws Chapter 111, §205(b) further defines the scope of the privilege providing, in relevant part, that “[information and records which are necessary to comply with risk management and quality assurance programs established by the board of registration in medicine and which are necessary to the work product of medical peer review committees, including incident reports required to be furnished to the board of registration, shall be deemed proceedings, reports or records of a medical peer review committee for purposes of section two hundred and four of this chapter and may be so designated by the patient care assessment coordinator.” G.L.c. Ill, §205(b).
Keeping in mind the relevant statutory provisions, the Hospital is compelled to meet the following criteria: that the information is not otherwise available from independent sources, that the information is necessary to comply with the Hospital’s risk management and quality assurance program, and that the information is necessary for the work product of the medical peer review committee.
In the Hospital’s original memorandum in opposition to compel production of the documents, it submitted an affidavit from its Assistant General Counsel who averred that the documents requested met the criteria to bring them under the medical peer review privilege. A subsequent supplemental memorandum contained affidavits from the following individuals: a member of the Patient Care Assistance Committee (Hospital’s medical peer review committee), the Director of Clinical Psychiatry at the Hospital, the Program Director of the Department of Psychiatry, and the Patient Care Assessment Coordinator. Each affidavit averred that incident reports were necessaiy components in the medical peer review process. Moreover, the affidavits expressed concern about the consequences that disclosure would have on the medical peer review process.[3]
The Court is mindful and respectful of the importance of the medical peer review process and its function in furthering the quality of treatment health care providers afford its patients. However, as stated above, an in camera review of the documents serves a dual purpose: to identify those documents that are not covered under the privilege and to preserve the confidentiality of those that are.[4] Therefore, it is this Court’s opinion that the Hospital must produce the documents requested under Request No. 6 of Schedule A to Plaintiffs Keeper of the Records Subpoena for an in camera review by the Court. The Court at that time will make a determination as to those documents that are discoverable thereby preserving the confidentiality of any documents that are privileged under G.L.c. Ill, §§204 and 205.
ORDER
It is hereby ORDERED that the Third-Party Defendant, New England Deaconess Hospital, now known as the Beth Israel Deaconess Hospital, produce all documents pursuant to Request No. 2 of Schedule A to Plaintiff John F. Carr’s Keeper of the Records Subpoena for an in camera review by this Court for a determination of whether the documents requested are privileged under applicable Massachusetts law. It is further ORDERED that the New England Deaconess Hospital produce all documents pursuant to Request No. 6 of Schedule A to Plaintiff John F. Carr’s Keeper of the Records Subpoena for an in camera review by this Court for a determination of whether the documents requested are privileged under G.L.c. Ill, §§205 and 205 (Medical Peer Review Privilege) and the regulations contained in 243 C.M.R. 3.00 et seq.
This ORDER is hereby STAYED for 30 days or until further order of the Single Justice of the Supreme Judicial Court or Appeals Court. Thereinafter, if com *533 pliance is not made, this Court will proceed with sanctions, default, and/or contempt proceedings.

Request No. 2 of Schedule A seeks:
The complete personnel file on Sheila [St. Just] Bruce, an employee of the New England Deaconess Hospital on and before July 22, 1993, to include, but not limited to, all certifications or listings for courses or instructional programs taken at and/or given by New England Deaconess Hospital prior to July 22, 1993 and all work evaluations.

Request No. 6 seeks:
Copies of any incident/deviation/unusual occurrence report, prepared by the New England Deaconess Hospital, its agents, servants, employees or staff, in the ordinary course of business, and not prepared in anticipation of litigation or for trial, to include any such report filed with the Hospital’s Quality Assessment Office, regarding the elopement or escape of Stanley W. Howard, a patient at the New England Deaconess Hospital on July 22, 1993; orders written by the New England Deaconess Hospital on July 22, 1993; orders written by the New England Deaconess Hospital Medical Staff for the transport, escort, conveying or moving of Stanley W. Howard to an MRI examination on July 22, 1993; Stanley W. Howard’s elopement or escape from a psychiatric aide, Sheila [St. Just] Bruce, on July 22, 1993; Stanley W. Howard’s suicide attempt and/or jump from the New England Deaconess Hospital parking garage on July 22, 1993; the care and treatment of Stanley W. Howard while under the care and custody of the New England Deaconess Hospital from July 14, 1993 through and including July 22, 1993; and the elopement or escape of Stanley W. Howard from Palmer-5, a locked psychiatric ward at the New England Deaconess Hospital on July 15, 1993.

Specifically, the affidavits raised concerns that disclosure or in camera review of incident reports would have serious consequences on the ability of hospitals to adequately provide peer review, and further, would have an adverse effect on the reporting of such incidences.

The Hospital cites to the case of Hughes v. American Regent Laboratories, 144 F.R.D. 177 (D.Mass. 1992), for the proposition that an in camera review of the documents is both unnecessary and violative of G.L.c. 111, §§204 and 205. This court, however, respectfully disagrees with that opinion of a United States Magistrate Judge.