Agnes, A.J.
This is a medical malpractice case brought by the plaintiff on behalf of the estate of the decedent, Robert B. Montejunas. The defendants, Philippe J. Sioufi M.D., and Baldpate, Inc., are named for their respective roles as the decedent’s treating physician and hospital. The plaintiff has moved the court to reconsider part of its ruling on the motion of the defendant, Philippe J. Sioufi, M.D., for a protective order regarding further deposition. This court previously denied defendant’s motion for a protective order, and compelled the defendant’s submission to an additional day of deposition.[1] The plaintiffs motion for reconsideration requests that this court expand its order, and further order the defendant Sioufi to answer certain questions posed in previous sessions of the deposition which he declined to answer based on an assertion of the peer review privilege. Pl.’s Mot. Reconsideration ¶ 1 (May 31, 2002). In particular, the plaintiff sought to question the defendant physician during his deposition in four different areas: (1) questions about his application for privileges at the defendant Baldpate Hospital; (2) questions about Baldpate’s criteria for the credentialing of physicians; (3) questions about Baldpate’s procedure for credentialing, promoting and appointing physicians; and (4) questions about whether his treatment of a patient or patients was ever the subject of an investigation by Baldpate Hospital. Plaintiffs memorandum in Support of Reconsideration at 3-12. The question before me is whether the defendant has a privilege to refuse to answer questions in these areas under the so-called peer review privilege.
DISCUSSION
Privileges are exceptions to the general duty imposed oh all people to testify. See Three Juveniles v. Com., 390 Mass. 357, 359, discussing Commonwealth v. Corsetti, 387 Mass. 1 (1982). The purpose of a privilege determines the limitations of its reach. The so-called peer review privilege, G.L.c. 111, §§204 & 205, was created to promote uninhibited investigation and exchange of opinion in the medical peer review context. Carr v. Howard 426 Mass. 514, 518 (1998). With that goal in mind, legislators designed G.L.c. 111, §204 “to foster aggressive critiquing of medical care by the provider’s peers.” See Beth Israel Hosp. Assn. v. Board of Registration in Med., 401 Mass. 172, 182 (1987). The statute provides that “proceedings, reports or and records of a medical peer review committee shall be confidential and shall not be subject to subpoena or discovery” with certain exceptions. G.L.c. 111, §204(a). As framed, the peer review privilege is not a personal privilege that may be waived by someone who provides information to or participates in a peer review process, but operates more like a disqualification in that it exempts certain information from disclosure.
In G.L.c. 111, §205(b), the legislature specifically listed some of the material that is privileged (e.g., records and reports “necessary” to comply with risk management and quality assurance programs, and incident reports that must be furnished to the board of registration in medicine), but also included language that limits the scope of the coverage of the privilege to “information and records” that are “necessary to the work product of the peer review committees.” G.L.c. 111, §205(b).[2]
In determining whether information sought during civil discovery proceedings is within the peer review privilege, the first question is whether the material is plainly within the scope of the privilege. Here, the only area of inquiry that might be regarded as plainly privileged concerns whether there was an investigation by the Baldpate Hospital of the defendant physician’s conduct. If the proceedings of a peer review committee are privileged and thus exempt from disclosure, a witness may not be compelled to disclose the existence of a proceeding. Thus, questions about whether the conduct of the defendant physician were reviewed and considered by the Baldpate Hospital’s peer review committee are privileged.
However, with regard to the other three categories of questions, it cannot be said that the information sought falls squarely within the privilege defined in G.L.c. 111, §§204(a) and 205(b). Contrast, Grande v. Lahey Clinic Hospital, 49 Mass.App.Ct. 77, 80 (2000) (privilege covers reports and any oral testimony by a *626 physician who served as a consultant and reporter to a Peer Review Committee even though she never attended a meeting of the Committee). See also Carr, 426 Mass. at 525 (certain types of incident reports are privileged under peer review because they are expressly privileged by statute such as incident reports that must be filed with the board of registration).
In Carr v. Howard, 426 Mass. at 522-23, the Supreme Judicial Court established that in circumstances in which material does not fall squarely within the parameters of the privilege the party asserting the privilege “must produce evidence tending to show (1) that the information and records sought are ‘necessary to comply’ with risk management and quality assurance programs . . . and (2) that the information and records ‘are necessary to the work product of medical peer review committees.’ ”
Thus, when the information or records do not fall clearly within the privilege, the burden is on the defendant to show that the information and records sought are subject to the privilege under the aforementioned requirements. “Determining whether the medical peer review privilege applies turns on the way in which a document was created and the purpose for which it was used, not on its content ." Miller v. Milton Hospital & Medical, 54 Mass.App.Ct. 495, 499 (2002). Here, the information sought is from a hospital physician who simply was required to submit to the hospital’s application and evaluation process in order to obtain and maintain credentials. Additional questions about the criteria used by the hospital for the evaluation, promotion and discharge of physicians or other medical staff likewise do not intrude into the confidential process of peer review. While some of the information sought by the plaintiff might aid the hospital’s Peer Review Committee, the defendant has failed to demonstrate that it is necessary to its functioning and access to it will not discourage hospitals from engaging experts for consultation and assistance in peer review.
Furthermore, the defendant’s position is undercut by the fact that the defendant physician is an original source of the information sought, and thus by express provision of law he can not claim privilege merely because some of the information sought was submitted to a peer review committee in its proceedings. G.L.c. 111, §204(b). There is no prohibition against disclosure under the peer review privilege when the content of the information obtained from an original source who is subject to a deposition such as the defendant physician in this case is identical to that which is contained in a confidential report authored by someone who interviews the original source and thus is subject to the privilege. See Carr, 426 Mass. at 533 (court admits that litigant is free to depose authors of privileged reports about their firsthand knowledge of events at issue). See also Hughes v. American Regent Lab., 144 F.R.D. 177, 179 (D.Mass. 1992). Here, the court deems it appropriate to allow the plaintiff to elicit information from the defendant through the course of discovery based on his firsthand knowledge of the relevant events.
The defendant, through counsel, has objected to several inquiries based upon credentialing language in the so-called peer review statute. These objections are based on protections provided under G.L.c. 111, §205(b):
Information and records which are necessary to comply with risk management and quality assurance programs . . . including . . . any information collected or compiled by a physician credentialing verification service operated by a society or organization of medical professionals for the purpose of providing credentialing information to health care entities shall be deemed to be proceedings, reports or records of a medical peer review committee for the purposes of section two hundred and four of this chapter . . .
The court in Francisco S. Pardo, M.D. v. General Hospital Corporation et al., No. 982174 (Mass. Super.) (2000) (12 Conn. L. Rptr. 459), has addressed the issue of asserting the privilege with respect to questions about the hospital’s credentialing process and procedures.[3] The court in Pardo was addressing claims of privilege by the defendant hospital as to information gathered by the co-defendant medical school. Although the medical school was not subject to the regulations of peer review reporting, the court’s interpretation of the credentialing language is nonetheless helpful in the resolution of this situation. The information sought by the plaintiff from the defendant concerning the hiring and application process, as well as the criteria for medical privilege and advancement, should be deemed as outside the intended realm of peer review privilege. That information was solicited not for report to a credentialing verification service or organization, but rather for internal placement and advancement. Needless to say, every application for employment or credentials of a medical professional goes to quality assurance and risk management. Hospitals and healthcare entities will rightfully attempt to hire health care providers with appropriate credentials to avoid future liability, but the information sought in this case was not intended to be covered by §205(b). That information sought by the plaintiff relates to the defendant’s knowledge and understanding of the hiring process at Baldpate, as well as Baldpate’s standards for privileging healthcare providers. Pardo is again helpful:
Grammatically, credentialing information is another example of material “necessary to comply with risk management and quality assurance programs[,]” but . . . has a special modifier; the “physician credentialing verification service operated by a society or organization of medical professionals” must also collect the information for the specific *627 purpose of turning it over to health care entities, not for its own purposes. G.L.c. 111, §205(b).
The record in this case shows that the plaintiffs inquiries extend no further than the defendant’s firsthand knowledge of credentialing. Accordingly, the information sought does not include that which the legislature intended to protect. Any determination of, or objection to that line of questioning must be supported by evidence consistent with the court’s analysis of peer review privilege in general. Furthermore, the lack of evidence proffered by the defendant as to his assertion that the information sought is that which is covered by the peer review privilege compels this court to make a determination that such information was not intended to fall under §205 (b), and thus is subject to discovery.
In sum, this court’s examination of the plaintiffs inquiries, the lack of evidence advanced by the defendant to support his assertion of privilege, and the court’s reading of the so-called peer review statute result in a determination that peer review privilege may not be asserted as to those deposition questions at issue.[4]
ORDER
For the above reasons, the Motion for Reconsideration is allowed and this court holds that in a medical malpractice action, the defendant physician has no basis to refuse to answer questions on the basis of the Peer Review Privilege, G.L.c. 111, §§204 and 205, about his employment with the co-defendant hospital, the nature of the process he followed to obtain privileges or credentials at the hospital, or the nature of any evaluation he underwent relating to his privileges or credentials in connection with continued employment or promotion at the hospital.

 Motion Order (May 22, 2002)—the defendant Sioufi shall submit to an additional day of deposition not to exceed six hours in length.

 The Court in Carr, 426 Mass. at 524-25, has interpreted “necessary” as an integral part, not to be interpreted as “absolutely necessary” or “indispensable.”

 The Court (Gershengorn, J) decided that internal promotion and credential information was not covered by the statute in that the information gathered was not intended for report to a verification service or organization, nor was the information intended by the legislature to allow for defendant’s stretch of peer review process and privilege to cover information that was provided for reasons other then external dissemination to other organizations or health care entities. ¶¶ 4-5.

 See supra note 2.