## In re: ADMINISTRATIVE SUBPOENA BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC.

### No. 05–10041–PBS.

United States District Court, D. Massachusetts.

Nov. 18, 2005.

---

Jeremy M. Sternberg, United States Attorney's Office, Boston, MA, for United States of America.

Sara A. Walker, Boston, MA, for Petitioner.

**MEMORANDUM AND ORDER**

SARIS, District Judge.

## I. INTRODUCTION

This action arises out of a federal criminal investigation of a Massachusetts physician ("Doctor"), a provider with Blue Cross Blue Shield of Massachusetts, for health care fraud. The government suspects that the Doctor bills Medicare for an expensive specialized treatment for patients with a rare disease when the patients have not been properly diagnosed with the disease. The government served Blue Cross with an administrative subpoena under the Health Insurance Portability and Accountability Act of 1996, 18 U.S.C. § 3486(a)(1)(A), asking for documents reviewed as part of its internal medical peer review committee's ongoing (but incomplete) inquiry into the Doctor's activities in this area. Blue Cross refused to produce those documents, asserting a federal medical peer review privilege. The govern-

ment filed a motion to compel production,[1] which was referred to a magistrate judge. On July 28, 2005, the magistrate judge denied the motion, and the government objected.

After hearing on September 26, 2005, the government modified its document request to exclude any interim or final reports or opinions of the peer review committee. Instead, the government now seeks (1) documents related to statements and representations by the Doctor, his counsel or representatives, as part of the peer review process; (2) documents relied on by the Doctor to support any positions he took as part of the peer review process; (3) documents provided by anyone other than the Doctor for consideration by the peer review committee; (4) any settlement agreements between Blue Cross and the Doctor arising out of the peer review process; and (5) any reporting by Blue Cross to any national registries or databases regarding any action taken with respect to the Doctor.

After review of the magistrate judge's Order, the Court *ALLOWS* the government's motion to compel, subject to a protective order.

## II. DISCUSSION

### A. *Standard of Review*

■ An interesting threshold question is the proper standard of review under the Federal Magistrate's Act, 28 U.S.C. § 636. The answer turns on whether the motion to compel is dispositive under § 636(b)(1)(B) or nondispositive under § 636(b)(1)(A). If the motion is dispositive, as the government now contends, then the Court must engage in *de novo* review of the magistrate judge's order. Fed.R.Civ.P. 72(b). If the motion is non-

dispositive, then the Court may only modify the order to the extent that it is "clearly erroneous or contrary to law." Fed. R.Civ.P. 72(a). The Court referred the matter to the magistrate judge for ruling in a pro forma order, and the magistrate judge denied the motion.

Rule 72, which was adopted in 1983, refers to all matters which can be heard and determined by a magistrate judge as "nondispositive," and all motions as to which a magistrate judge may only make a recommendation as "dispositive." *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 5 (1st Cir.1999) (in a medical malpractice case, holding that discovery sanctions are ordinarily nondispositive unless they dispose of a claim or defense). However, one cannot merely refer to the list of dispositive motions which are exempted from the normal operation of § 636(b)(1)(A) to decide whether a particular motion is dispositive under Rule 72. Instead, "that enumeration informs the classification of other motions as dispositive or nondispositive." *Id.* at 5–6; *Strong v. United States*, 57 F.Supp.2d 908, 913 (N.D.Cal.1999) (holding that "a magistrate judge may not determine motions that are analogous to the enumerated motions, *i.e.*, dispositive motions"). Since an administrative subpoena is not among the enumerated motions listed in § 636(b)(1)(A), the Court must decide whether the motion is "dispositive" under Rule 72 in order to determine the correct standard of review.

Many courts have treated similar motions to enforce or quash administrative subpoenas, or the like, as dispositive motions for purposes of review where the matter involving the subpoena constitutes the entire case before the Court. *See, e.g., Nat'l Labor Relations Bd. v. Frazier*, 966

---

1. Blue Cross did produce documentation generated in an investigation by its fraud prevention and investigative unit, including two expert reports.

F.2d 812, 817 (3d Cir.1992) (stating that an NLRB subpoena is "like a motion to dismiss" because "once the court grants a motion to dismiss or compels compliance with a subpoena, the court disposes of the entire case before it"); *United States v. Mueller*, 930 F.2d 10, 12 (8th Cir.1991) (treating an IRS summons as a dispositive matter and finding that *de novo* district court review palliated any problem with the magistrate judge's reference to his findings as an order); *Aluminum Co. of Am., Badin Works v. U.S. Envtl. Prot. Agency*, 663 F.2d 499, 501 (4th Cir.1981) (treating a motion to quash an EPA warrant as dispositive because the motion constituted the entire proceeding); *Strong*, 57 F.Supp.2d at 913–14 (treating a motion to quash an IRS summons as a dispositive motion because "[u]nlike a discovery motion, petitions to quash summonses are not ancillary to a larger proceeding"); *In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98–19*, 182 F.R.D. 196, 201 (E.D.Va. 1998).

In this case, the government's motion to compel production of documents pursuant to a subpoena is the entire proceeding before this Court. The only matter for this Court to decide is whether to enforce the subpoena. As such, the decision both "determines with finality the duties of the parties" and "seals with finality the district court proceeding and is subject to appellate review." *See Frazier*, 966 F.2d at 817–18. As such, it is of the "same genre" as the enumerated motions in § 636(b)(1)(A), and the Court will treat the motion as dispositive and will review the magistrate judge's findings *de novo* under 28 U.S.C. § 636(b)(1)(C). *See Phinney*, 199 F.3d at 6.

## B. *Federal Medical Peer Review Privilege*

 The Court must decide whether to recognize a federal medical peer review privilege. No court in the First Circuit or District of Massachusetts has yet done so under federal law, but Massachusetts state law does recognize the privilege.[2] Mass. Gen. Laws ch. 111, § 204(a) (stating that "the proceedings, reports, and records of a medical peer review committee shall be confidential and ... not be subject to subpoena or discovery, or introduced into evidence in any judicial or administrative proceeding"). As Magistrate Judge Collings stated in his decision, "there is no extant federal peer review privilege and ... most federal courts, including the Supreme Court, have declined to recognize a state peer review privilege in a federal case." (Mem. & Order 4 (citations omitted).) *See also Nilavar v. Mercy Health System–Western*, 210 F.R.D. 597, 601 (S.D.Ohio 2002) (noting that "federal common law has not evolved to the point that it recognizes a de jure physician peer review evidentiary privilege"); *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 692 (E.D.Cal.1993) ("There is no federal statutory basis for a medical peer review privilege.").

In federal question cases, federal common law controls the existence and application of evidentiary privileges. *See* Fed. R.Evid. 501 (stating that privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience"). The Supreme Court has directed that although courts have the power to be flexible and adaptive

---

**2.** One Court in the District of Massachusetts has applied § 204(a), but that was in a wrongful death case removed on the basis of diversity. *Hughes v. Am. Regent Labs.*, 144 F.R.D. 177, 179 (D.Mass.1992). Under Rule 501, when state law provides the rule of decision, a federal court must apply state privilege law. Fed.R.Evid. 501.

with regard to the law of privilege, they should not use the power to recognize new privileges expansively. *See Univ. of Pa. v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) ("We do not create and apply an evidentiary privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence'" (citing *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980))). Moreover, the Supreme Court has indicated that recognition of any privilege contravenes the "fundamental principle" that the public has a right to every person's evidence. *Trammel,* 445 U.S. at 50, 100 S.Ct. 906 (quoting *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)).

 When the forum state has recognized a particular privilege, a court may take that into account when deciding whether to recognize that privilege as part of federal law. *See Jaffee v. Redmond,* 518 U.S. 1, 12–13, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (observing that "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one"). As a matter of comity, federal courts recognize state privileges "where this can be accomplished at no substantial cost to federal substantive and procedural policy." *See United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976); *see also* 3 Joseph M. McLaughlin, Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 501.03[5][b], at 501–25 (2d ed.1995).

Although this Court must take the Massachusetts statute into account, it must also heed the Supreme Court's directive in *University of Pennsylvania* that courts

should be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." 493 U.S. at 189, 110 S.Ct. 577. In that case, a Title VII suit brought by a female professor denied tenure, the Supreme Court rejected the university's assertion of a peer review privilege with respect to documents produced by the tenure committee. *Id.* at 189–92, 110 S.Ct. 577. The Court noted that Congress could have created such a privilege for educational institutions when it passed Title VII. That Congress did not do so evinced a federal policy weighing against recognition of the privilege. *Id.* at 189–90, 110 S.Ct. 577.[3]

Just as Congress chose not to include a privilege for educational institutions in the Civil Rights Act, Congress similarly chose not to include a medical peer review privilege in the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101–11152 ("HCQIA"). The Act was designed to provide "incentive and protection for physicians engaging in effective professional peer review." 42 U.S.C. § 11101(5) (2005). As such, Congress extended qualified immunity from suit to those conducting such peer reviews. 42 U.S.C. § 11111(a)(2) (2005). Significantly, Congress did not also create a federal evidentiary privilege for most documents produced during such a review, indicating that it "not only considered the importance of maintaining the confidentiality of the peer review process, but took the action it believed would best balance protecting such confidentiality with other important federal interests." *Teasdale v. Marin Gen. Hosp.,* 138 F.R.D. 691, 694 (N.D.Cal.1991). This Court must, especially in light of the

---

**3.** Unlike this case, the university sought to assert a privilege which was unrecognized in Pennsylvania state law.

Supreme Court's language in *University of Pennsylvania*, consider it important that "Congress spoke loudly with its silence in not including a privilege against discovery of peer review materials in the HCQIA." *Id.; Nilavar*, 210 F.R.D. at 602 ("Congress, in enacting the HCQIA, carefully crafted a very specific privilege, applicable to peer review material submitted to the Secretary pursuant to the dictates of the mandatory reporting provisions of that statute. That is as far as Congress went, and that is as far as this Court should apply the privilege contained therein."); *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 560 (S.D.N.Y.1996).

It is against this background that the Court must decide whether to recognize a federal medical peer review privilege. The First Circuit case *In re Hampers* guides district courts in determining whether to recognize a state privilege under Federal Rule 501. 651 F.2d 19 (1981). Under the *Hampers* test, the Court must first determine whether Massachusetts state law would recognize the privilege, which it surely would in this case. *Hampers*, 651 F.2d at 22. Then, the Court must decide whether the privilege is "intrinsically meritorious." *Id.* In order to make this determination, the First Circuit has directed courts to evaluate four factors: (1) whether the communications originate in a confidence that they will not be disclosed, (2) whether this element of confidentiality is essential to the full and satisfactory maintenance of the relations between the parties, (3) whether this relationship is one which ought to be sedulously fostered, and (4) whether the injury that would inure to the relation by the disclosure of the communications would be greater than the benefit thereby gained for the correct disposal of litigation. *Id.* at 23–24.

While the Massachusetts medical peer review privilege satisfies the first three elements, under the fourth prong of *Hampers*, this Court must weigh the benefits of enforcing the privilege against the costs. *Marshall v. Spectrum Med. Group*, 198 F.R.D. 1, 4 (D.Me.2000). Applying the *Hampers* test, two courts have refused to enforce a state medical peer review privilege in the employment discrimination and civil rights areas. *See Krolikowski v. Univ. of Mass.*, 150 F.Supp.2d 246, 248 (D.Mass.2001) (refusing to recognize Massachusetts medical peer review statute under federal law in a sex discrimination action); *Marshall* 198 F.R.D. at 5 ( finding that the defendant medical group was entitled to access to peer review documents in a case challenging termination of employment of a psychiatrist).

Blue Cross alleges that they will not be able to retain outside consultants to aid or convince other institutions to share information in the peer review process if the process is subject to public disclosure. Consistent with this position, Massachusetts courts have recognized that the Massachusetts privilege is justified by the need to foster "rigorous and candid evaluation of professional performance by a provider's peers." *Swatch v. Treat*, 41 Mass. App.Ct. 559, 563, 671 N.E.2d 1004, 1007 (1996). Blue Cross points out that all fifty states have adopted some form of the medical peer review privilege with forty-six states enacting legislation that recognizes the privilege. Further, the policies have been recognized nationally.

Given that the HCQIA already provides for qualified immunity from suit for those participating in peer reviews and that the production of documents would be subject to a protective order to preserve confidentiality, any concerns about discouraging rigorous and honest evaluation of physician conduct by public disclosure have been minimized. *See Syposs v. United States*, 63 F.Supp.2d 301, 308–09 (W.D.N.Y.1999)

(finding that "the record does not support the conclusion that such benefits [of peer review] would be withheld by physicians unless their discussions are treated as privileged.").

In *Hampers*, the First Circuit counseled that courts should "seek a more particularistic answer than the macrocosmic one that effective federal criminal law enforcement is more important than" the state interest sought to be protected by the state privilege. *See Hampers*, 651 F.2d at 23. However, in *University of Pennsylvania*, the Supreme Court cautioned that "a requirement . . . beyond a showing of relevance, would place a substantial litigation-producing obstacle in the way of the [EEOC's] efforts to investigate and remedy alleged discrimination." 493 U.S. at 194, 110 S.Ct. 577. Thus the government should not be Hampered in its investigation so long as it shows the documents sought could likely be relevant. The government persuasively asserts that given the similarity of the two investigations, it is likely that the documents requested by the government will provide substantial assistance in its endeavor. There is nothing in the record that indicates that the government could easily get the information elsewhere. While Blue Cross has apparently produced reams of documents, including two of its own expert reports, there is no indication that these include the doctor's explanation for his billing practice and the documentation he produced to support his bills.

The Supreme Court has several times refused to recognize a privilege when doing so would inhibit a federal investigation. *See United States v. Gillock*, 445 U.S. 360, 373, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980) (refusing to recognize privilege for state legislators when doing so would "impair the legitimate interest of the Federal Government in enforcing its criminal statutes"); *Trammel*, 445 U.S. at 50, 100 S.Ct.

906 (refusing to extend spousal privilege when benefits would not "outweigh the need for probative evidence in the administration of criminal justice").

Furthermore, the federal interest in this investigation is to enforce laws against health care fraud, an interest other federal courts have found sufficiently strong to refuse to recognize a federal medical peer review privilege. *See In re Baptist Mem. Hosp.*, 2004 WL 2905391, at *3, 2004 U.S. Dist. LEXIS 26153, at *7 (W.D. Tenn. June 22, 2004) (refusing to recognize privilege when government subpoenaed hospital peer review documents following an indictment of a doctor for health care fraud); *Accreditation Ass'n for Ambulatory Health Care, Inc. v. United States*, 2004 WL 783106, at *2–3, 2004 U.S. Dist. LEXIS 6493, at *7–9 (N.D.Ill. Jan. 8, 2004) (refusing to apply medical review privilege when government sought "highly relevant" documents in health care fraud investigation against a doctor); *United States v. OHG of Ind., Inc.*, 1998 U.S. Dist. LEXIS 23512, at *24 (N.D.Ind. Oct. 8, 1998) (compelling production of documents in *qui tam* action seeking to recover from a doctor for health care fraud).

Additionally, this decision comports with the findings of the vast majority of federal courts that have faced this issue in other contexts. *See, e.g., Virmani v. Novant Health, Inc.*, 259 F.3d 284, 292 (4th Cir. 2001) (refusing to allow privilege in case alleging discrimination during the peer review); *Mem'l Hosp. v. Shadur*, 664 F.2d 1058, 1063 (7th Cir.1981) (expressly rejecting the privilege in the civil antitrust context); *Nilavar*, 210 F.R.D. at 604 (noting that the "vast majority" of federal courts have refused to recognize the privilege); *Syposs*, 63 F.Supp.2d at 308 (refusing to apply the privilege in a Federal Tort Claims Act case); *but see Weekoty v. United States*, 30 F.Supp.2d 1343, 1348 (D.N.M.

1998) (enforcing peer review privilege when doing so will have a "minimal impact" on the plaintiff's claims); *Cohn v. Wilkes Gen. Hosp.*, 127 F.R.D. 117, 121 (W.D.N.C.1989) (enforcing peer review privilege in civil antitrust action as an extension of the HCQIA prior to Supreme Court's ruling in *University of Pennsylvania*).

As such, the government has shown sufficiently that the costs of withholding the documents would outweigh the benefits of recognizing a medical peer review privilege in the context of a federal criminal investigation. Therefore, the Court will not recognize a federal medical peer review privilege under Rule 501.[4]

### III. CONCLUSION

The motion to compel production (Docket No. 2.), as modified, is ***ALLOWED***.[5]

---

4. In light of the weight of authority declining to recognize a federal peer review privilege, the standard of review is not dispositive here. Thus, even if an administrative subpoena were a nondispositive matter, I conclude that the recognition of a federal privilege is contrary to law under 28 U.S.C. § 636.

5. One issue that neither side has addressed is whether the HCQIA allows the government access to any reporting by Blue Cross to national registries or databases. Some caselaw suggests that this information is privileged under 42 U.S.C. § 11137(b)(1). *See Med. Soc'y v. Mottola*, 320 F.Supp.2d 254, 259 (D.N.J.2004) (noting that "unless otherwise provided by state law, all information collected by the Data Bank and 'reported under the subchapter' is presumed confidential and is released only as specifically provided by the HCQIA"). Because the parties have not addressed this issue, the Court will not decide it sua sponte.