MARILYN SWATCH *vs.* EILEEN TREAT.

No. 96-P-431.

Middlesex. September 11, 1996. - November 1, 1996.

Present: KASS, SMITH, & LENK, JJ.

*Social Worker. Practice, Civil,* Intervention. *Words,* "Medical peer review committee."

In a medical malpractice action brought against a psychiatric social worker by a former client, a proceeding initiated previously by the client before a panel convened by the Massachusetts chapter of the National Association of Social Workers constituted medical peer review within the meaning of G. L. c. 111, §§ 1 and 204. [561-562]

A medical peer review committee of the National Association of Social Workers (NASW) was entitled to enforcement of the confidentiality agreement signed by the client who initiated the convening of the peer review committee, and it was appropriate for the NASW to assert its rights by moving to intervene in the then pending malpractice action between the client and the social worker rather than by initiating an independent action based on the agreement [562-564]; further, in light of the record, it was clear that the intervention was necessary, where the parties to the action had not acted to protect the intervener's interest in the confidentiality of a certain document [564].

In a civil action, a motion to intervene was timely filed where more than one year then remained under the applicable tracking order to conduct discovery. [564]

CIVIL ACTION commenced in the Superior Court Department on September 22, 1994.

A motion to intervene was heard by *James F. McHugh,* J.

*Beth S. Herr* for the plaintiff.

*John Foskett* for the interveners.

*Matthew L. Schemmel, Thomas R. Kiley, & Carl Valvo,* for Professional Liability Foundation, Ltd., amicus curiae, submitted a brief.

KASS, J. We consider the right of a medical peer review committee, within the meaning of G. L. c. 111, § 1, to intervene in a civil action between a patient and health care provider for the purpose of protecting the confidentiality,

conferred by G. L. c. 111, § 204(*a*), of a peer review committee report.

The controversy has its source in what we may describe broadly as a medical malpractice action brought by Marilyn Swatch against Eileen Treat,[1] alleging that Treat, a licensed clinical social worker, had rendered psychotherapeutic treatment to the plaintiff Swatch that failed to meet accepted professional standards and was, therefore, negligent. There are also counts for intentional infliction of emotional distress, negligent infliction of emotional distress, and unfair trade practices within the meaning of G. L. c. 93A, § 2.

Antecedent to the legal action, Swatch had filed with the Massachusetts chapter of National Association of Social Workers (NASW) a charge that Treat had acted unethically.[2] NASW is a national voluntary professional organization with local chapters. We refer interchangeably to the national organization and the local Massachusetts chapter as NASW. In accordance with procedures published by NASW,[3] the chairperson of the committee on inquiry (of the Massachusetts chapter) convened a hearing panel before which Swatch aired her grievance and Treat was permitted to speak about Swatch's course of therapy and Treat's termination of it.[4] The hearing panel may hear such other witnesses as the complainant and respondent offer or as the panel determines to call. In due course the hearing panel issued a report, and we may infer that report was critical of Treat because Swatch used it as an appendix to her complaint[5] and, again, as an exhibit in a submission before a medical malpractice tribunal established under G. L. c. 231, § 60B.

It is the use of that report by Swatch to which NASW objects on two accounts. *First*, it was a condition of the NASW grievance process to which Swatch submitted herself

---

[1]The plaintiff in the case moved that we use fictitious names in the report of our decision because the underlying quarrel involves her psychotherapy — matter that is of a sensitive personal nature. We allowed that motion and use fictitious names for the plaintiff and the defendant.

[2]The charge was made on a printed form available from NASW.

[3]NASW Procedures for the Adjudication of Grievances (Rev. 1988). Those procedures are part of the record on appeal.

[4]One of Swatch's complaints was that Treat had improperly terminated treatment with Swatch on February 20, 1992.

[5]On motion the Superior Court judge impounded the report, and it is not a part of the record on appeal.

that the proceedings and the report remain confidential. *Second*, the proceedings and the report enjoyed the protected status conferred by G. L. c. 111, § 204. NASW moved to intervene in the Swatch action against Treat as a defendant for the limited purpose of preserving the confidentiality of the report of NASW's committee on inquiry and of preserving the integrity of NASW's peer review process. A judge in the Superior Court denied the motion to intervene, reasoning as follows:

> "[T]he statute was designed to protect the interests of those who appear and participate in the peer review process, not to protect some abstract interest in the process itself. Accordingly, where all those who participated in the process agree, or at least do not object, to use of the fruits of the process, I believe that those who set the process up have no independent right to asse[r]t."

1. *Whether NASW's process is peer review.* A threshold question in assessing NASW's interest in the confidentiality of its committee on inquiry process is whether that process was peer review within the meaning of the statute, G. L. c. 111. Section 1 of c. 111, as amended by St. 1987, c. 467, § 1, defines a "health care provider" as "any doctor of medicine . . . *social worker* . . . licensed under the provisions of [c. 112] . . . " (emphasis supplied). It is agreed by the parties that Treat is a licensed social worker.[6] The definition, so far as material, of "medical peer review committee" that appears in G. L. c. 111, § 1, as appearing in St. 1987, c. 579, § 1, is:

> "a committee of a state or local professional society of health care providers, . . . which committee has as its function the evaluation or improvement of the quality of health care rendered by providers of health care services, the determination whether health care services were performed in compliance with the applicable standards of care, . . . the determination of whether a health care provider's actions call into question such health care provider's fitness to provide health care services . . . ."

---

[6]The provisions governing the licensure of social workers appear at G. L. c. 112, §§ 130-137.

NASW's manual governing its adjudication of charges of violation of professional standards (see note 3, *supra*) describes its procedures as "not formal legal procedures, but rather provid[ing] for a peer review process." The NASW procedures have as their announced purpose the promotion of "the quality and effectiveness of social work practice." The manual states, "[M]any legal strictures and conventions are not observed." The result of NASW's "adjudication" is "intended to be constructive and educative rather than punitive." Parties may not bring a lawyer before the NASW committee on inquiry and may not be represented before the committee by another person, although a party may bring a "consultant" who is a member of NASW. That consultant may not, however, ask questions or address the hearing panel. The NASW procedures prohibit recording of the proceedings.

Swatch argues that, because the NASW process she initiated began with a complaint and because she and Treat appeared before the hearing panel, the process was adversary rather than peer review. We do not think that even minimally persuasive. The hearing panel was not dealing with questions of whether an X-ray was competently read, laboratory results followed, or surgery correctly performed, inquiries that do not require hearing from the patient. Rather, the NASW hearing panels must deal, generally, with one-on-one talk sessions between patient and therapist, and a peer review panel must necessarily hear from the principals in the treatment regime. Matched against this are the closed nature of the proceedings, the emphasis on education and improvement (rather than punishment), the purposeful exclusion of the trappings of legal process, and the insistence on confidentiality. Indeed, Swatch had subscribed in writing to a statement, "I pledge to treat all associated materials and processes confidentially." We conclude, as did the judge who ruled on the motion to intervene, that the proceeding before the hearing panel of the local NASW's committee on inquiry was peer review within the meaning of G. L. c. 111, §§ 1 and 204.

2. *NASW's interest in the confidentiality of its peer review proceedings.* Paragraph (*a*) of G. L. c. 111, § 204, as appearing in St. 1987, c. 467, § 3, erects a general shield of confidentiality for "proceedings, reports and records of a medical peer review committee." There are certain exceptions pertaining to administrative proceedings before State boards

of registration, but, in any event, no report of a peer review committee may be introduced in private judicial proceedings. G. L. c. 111, § 204(*e*). The objective of peer review is rigorous and candid evaluation of professional performance by a provider's peers. *Beth Israel Hosp. Assn.* v. *Board of Registration in Med.*, 401 Mass. 172, 182-183 (1987). See *Fowles* v. *Lingos*, 30 Mass. App. Ct. 435, 441 & n.8 (1991).

Peer review committees have a profound interest in the sanctity and protection of the confidentiality under which they operate. The ability of committee members to speak with candor and the willingness of persons called before them to be equally forthright would be seriously hampered by public release of proceedings or reports of the peer review body. See *Morse* v. *Gerity*, 520 F. Supp. 470, 472 (D. Conn. 1981); *Hughes* v. *American Regent Lab.*, 144 F.R.D. 177, 178-179 & n.2 (D. Mass. 1992), in which hospitals relied on protective statutes to resist production of documents from their peer review committees. The view taken by the judge who ruled on the motion to intervene — that the confidentiality of peer review proceedings is somehow reduced to an abstract and unenforceable right once a patient or provider involved with the peer review process blows the cover of confidentiality — has no support in the cases or in the policy behind the grant of confidentiality described in those cases. See also *Franco* v. *District Ct. of Denver*, 641 P.2d 922, 928-929 (Colo. 1982); *Jenkins* v. *Wu*, 102 Ill. 2d 468, 479-482 (1984); *Mennes* v. *South Chicago Community Hosp.*, 100 Ill. App. 3d 1029, 1030-1032 (1981); *Terre Haute Regional Hosp., Inc.* v. *Basden*, 524 N.E.2d 1306, 1308-1309 (Ind. Ct. App. 1988); *Whisenhunt* v. *Zammit*, 86 N.C. App. 425, 426-428 (1987).

Although the reasons for peer review confidentiality that we have discussed represent a particularly powerful basis for NASW's interest in removing the committee on inquiry's report from the records of the case in the Superior Court and from the malpractice tribunal, NASW has a parallel basis in the nature of contract that provides it with a like interest. On initiating the review by NASW of her therapy by Treat, the plaintiff, who is a lawyer, signed the following statement: "I have read the NASW Procedures for the Adjudication of Grievances, and I agree to abide by the conditions set forth in them. I pledge to treat all associated materials and processes confidentially." That contractual undertaking by the plaintiff

is enforceable by NASW, and it is more direct and less wasteful of judicial resources to accomplish that through intervention in the existing action between Swatch and Treat rather than through the initiation of an independent action by NASW.

3. *NASW's right to intervene.* Under Mass.R.Civ.P. 24(a)(2), 365 Mass. 769 (1974), the additional questions to consider are whether NASW's motion to intervene was timely and whether NASW's intervention is necessary to protect the interest concerned, the confidentiality of the NASW report.

After NASW learned of Swatch's use of the NASW report, it attempted to have her withdraw it and all references to NASW proceedings. At the time that NASW served its motion to intervene, more than a year remained under the tracking order in Superior Court to conduct discovery. The motion was entirely timely. See *Mayflower Dev. Corp.* v. *Dennis*, 11 Mass. App. Ct. 630, 635 n.9 (1981); *Cosby* v. *Department of Social Servs.*, 32 Mass. App. Ct. 392, 395 (1992).

As to the necessity of intervention by NASW, it is apparent from the record that the principals will not act so as to guard the NASW report. One of them has already published the report. It is not, however, a matter of spilled milk. The NASW material can be withdrawn from the court records and the breach of the confidentiality of those records will be limited. NASW's intervention will also have served to establish its right to maintain confidentiality of its peer review materials.

NASW's motion to intervene is to be allowed, and an order shall be entered in the Superior Court that expunges the NASW report, including references to its contents, from the record in the case.

*So ordered.*