Lauriat, J.
The Dana-Farber Cancer Institute, Inc. (“the Institute”) and David M. Livingston (collectively, “the DFCI defendants”), two of the defendants in this action, have moved for entry of a protective order “to preserve the confidentiality of medical peer review proceedings, reports and records as mandated by Mass.Gen.L.c. Ill, §§203-05.” The plaintiff, Lois Ayash, M.D. (“Ayash”) and defendants The Boston Globe and Richard A. Knox (“the Globe defendants”) oppose the DFCI defendants’ motion on grounds that it is over broad, includes nonprivileged documents within its scope, and includes documents as to which the DFCI defendants have either expressly or by implication waived the medical peer review proceedings privilege.[1]
After hearing the arguments of counsel for the parties, and upon consideration of the parties’ written submissions, including affidavits and supporting papers, the DFCI defendants’ motion for a protective order is denied without prejudice to its assertion of the medical peer review privilege with respect to specific documents or things.
DISCUSSION
I.
The DFCI defendants, by their present motion, “seek to prohibit the disclosure by the plaintiff and protect from disclosure any and all documents in their possession which are covered by the medical peer review privilege (Mass.Gen.L.c. Ill, §§203-05)." General Laws chapter 111, §204(a) provides that:
Except as otherwise provided in this section, the proceedings, reports and records of a medical peer review committee shall be confidential and shall not be subject to subpoena or discovery, or introduced into evidence, in any judicial or administrative proceeding . . .
General Laws chapter 111, §204(b) provides that:
Documents, incident reports or records otherwise available from original sources shall not be immune from subpoena, discovery or use in any such judicial or administrative proceedings merely because *217 they were presented to such committee in connection with its proceedings.
In their supporting memorandum of law, the DFCI defendants have asserted that proceedings, documents and records of one entity at the Institute, the “Sallan Committee,” and the proceedings, documents and records which constitute the corrective action process that was instituted by the Institute against Ayash (the “Corrective Action proceedings”), are protected by the statutory medical peer review privilege. The Sallan Committee was an internal peer review committee established by the Institute’s Board of Trustees, pursuant to the Institute’s corporate bylaws, to “investigate the accidental overdosing of two patients enrolled in Dana-Farber protocol 94-060, to evaluate the individuals and organizational units that may have been involved in these overdoses, and to make recommendations to the Board on courses of action to promote patient safety and efficacy of treatment.” Affidavit of Stephen E. Sallan, M.D., ¶3.
The Sallan Committee appears to meet the statutory definition of a medical peer review committee, G.L.c. Ill, §1, and therefore its proceedings, records and reports are presumed by the court, at this stage, to be protected by law. In any event, Ayash has asserted, without contradiction, that she was not a member of that committee, and that she does not possess any proceedings, records or reports of that committee which she could knowingly produce or disclose. On that basis alone, the DFCI defendants’ present motion for a protective order against her is over broad.[2]
The Corrective Action proceedings involving Ayash were initiated and conducted by the Institute pursuant to Article 6: Corrective Actions; Adverse Appointment and Reappointment Decisions; Rights of Fair Hearing of the Bylaws of the Professional Medical Staff of the Dana-Farber Cancer Institute, Inc. (“Staff Bylaws”). Whether these proceedings, or any documents that were presented or generated in connection with these proceedings, are protected by the medical peer review privilege is less clear.
The stated Purpose of Corrective Action (Staff Bylaws, Article 6.1) tracks the definition of “medical peer review committee” set forth in G.L.c. 111, §1. However, the corrective action process itself, as set out in Article 6 of the Staff Bylaws, may lead to a variety of disciplinary sanctions against a doctor at the Institute, and is expressly subject to requirements of procedural due process, including the right to a hearing, the right to representation by counsel, the right to call, examine and cross-examine witnesses, the right to present evidence, and the requirement that a record of any hearing be kept and provided to the doctor. Staff Bylaws, Articles 6.7.2 and 6.7.7. These aspects of the Corrective Action proceedings would appear inconsistent with the nature and purpose of a medical peer review committee. Cf., Swatch v. Treat, 41 Mass.App.Ct. 559, 562 (1996) (Hearings before National Association of Social Workers’ committee on inquiry, which emphasized “education and improvement (rather than punishment), [and] the purposeful exclusion of the trappings of legal process,” held to be peer review within the meaning of G.L.c. 111, §§ 1 and 204). Moreover, in the context of this case, the Corrective Action initiated against Ayash appears to have been primarily if not entirely retrospective and disciplinary in nature, rather than prospective and to improve the quality of patient care. Furthermore, Article 6 of the Staff Bylaws expressly recognizes that litigation (and therefore discovery and disclosure of Corrective Action records) may follow Corrective Action proceedings, since it requires that the doctor “exhaust the remedies afforded by Article 6 of these Bylaws before resorting to legal action.” Staff Bylaws, Article 6.13.
To the extent that Ayash possesses documents given to her pursuant to the Corrective Action Proceedings, the court concludes that those specific documents are not subject to the medical peer review privilege. Whether any other documents generated by the Corrective Action proceedings against Ayash but not disclosed to her are protected by the medical peer review privilege is beyond the scope of the DFCI defendants’ present motion.
To the extent that the DFCI defendants now seek to protect from disclosure documents which were generated by Ayash and/or her attorneys, whether for presentation to the Sallan Committee or as part of the Corrective Action proceedings, those documents are exempt from the medical peer review privilege. G.L.c. 111, §204(b). Similarly, any documents delivered to Ayash and/or her attorney by or on behalf of the DFCI defendants would appear to be exempt from the medical peer review privilege. Finally, as to any documents relating to the Sallan Committee or the Corrective Action proceedings that Ayash may have gotten from the Globe defendants, either before this action was commenced or during discovery, any medical peer review privilege that the DFCI defendants now seek to assert must be deemed to have been lost or foreclosed, since the Globe defendants are neither parties to any medical peer review proceedings nor clearly bound by the statutes governing those proceedings. See Memorandum of Decision and Order on Defendants Globe Newspaper Company and Richard A. Knox’s Motion for Summary Judgment as to Count VII of the Complaint, Lois Ayash, M.D. v. Dana Farber Cancer Institute, Inc. et al., 7 Mass. L. Rptr. 176, Suffolk Superior Court, Civil Action No. 96-565-E (Lauriat, J.) (July 9, 1997) at 13-16. Thus, the DFCI defendants’ motion for a protective order and their proposed Protective Order are too broad, and their motion must be denied.
II.
The Globe defendants have suggested, in their opposition to the present motion, that an in camera *218 review of all alleged medical peer review documents by counsel for the parties be permitted in advance of any hearing and ruling on the DFCI defendants’ motion for a protective order. This procedure, the Globe defendants assert, would allow the parties to articulate and particularize their arguments that some or all of the materials sought to be protected are not within the scope of the medical peer review privilege. Unfortunately, however efficient and economical such a procedure might at one time have been, it has been effectively eclipsed by the Supreme Judicial Court’s recent decision in Carr v. Howard; New England Deaconess Hospital Corp., 426 Mass. 514 (1998) (in camera review by court of alleged medical peer review privileged documents must be last resort, if permitted at all, for determining whether documents are in fact privileged). Henceforth, the parties must comply with the requirements set forth in Carr in asserting and objecting to the application of the medical peer review privilege to otherwise relevant and discoverable documents sought from the DFCI defendants in this action.
ORDER
For the foregoing reasons, the Joint Motion of the Defendants Dana-Farber Cancer Institute, Inc. and David M. Livingston for a Protective Order is DENIED WITHOUT PREJUDICE.

 Although the DFCI defendants filed their present motion and the opposition papers in early September 1996, it has only recently been set down for argument and heard by the court.

 The court does not presume to know what privileged documents relating to the proceedings, reports and records of the Sallan Committee the Globe defendants may have in their possession, but since the DFCI defendants’ motion for a protective order is directed solely at Ayash, it will not tackle this thorny issue at this time.