DONALD J. GRANDE *vs.* LAHEY CLINIC HOSPITAL, INC.,
& others.[1]

No. 98-P-936.

Middlesex. November 5, 1999. - April 4, 2000.

Present: ARMSTRONG, SMITH, & KASS, JJ.

*Hospital,* Peer review. *Privileged Communication. Witness,* Privilege. *Statute,*
Construction.

The testimony and report of a medical doctor, retained as an out-of-State
consultant to a hospital peer review committee that was appraising the
professional work of a certain physician in a number of specifically identi-
fied cases, constituted "information and records . . . necessary to the work
product" of the peer review committee under G. L. c. 111, § 205(*b*),
privileged from discovery or subpoena under G. L. c. 111, § 204(*a*); as a
consequence, the medical doctor was entitled to a protective order prohibit-
ing her deposition in a civil action brought against the hospital by the
physician in question. [79-81]

CIVIL ACTION commenced in the Superior Court Department on
January 18, 1996.

A motion for a protective order was heard by *Maria I. Lopez,*
J.

A proceeding for interlocutory review was heard in the Ap-
peals Court by *Armstrong,* J.

*Kevin P. Light* for the defendants.

*H. Bissell Carey, III,* for the plaintiff.

*Carl Valvo,* for Professional Liability Foundation, amicus
curiae, submitted a brief.

KASS, J. In connection with an action for breach of contract,
fraudulent misrepresentation, intentional interference with

[1]Lahey Clinic Foundation, Inc., Brooke R. Seckel, and J. Lawrence Munson.

advantageous business relations, defamation, and other wrongs,[2] the plaintiff, Donald J. Grande, M.D., sought to depose Mary Maloney, M.D. She had been retained by Lahey Clinic Hospital, Inc. (Lahey), one of the primary defendants, as an out-of-state consultant to a Lahey peer review committee that was appraising the professional work of Dr. Grande in a number of specifically identified cases. Lahey sought a protective order on the ground that G. L. c. 111, §§ 204(*a*) and 205, conferred a peer review privilege on all information that Dr. Maloney acquired or developed in connection with her inquiry into the work of Dr. Grande. A judge of the Superior Court ruled that although Dr. Maloney's written report to the Lahey peer review committee was privileged, her oral testimony was not. The judge based that distinction on the ground that Dr. Maloney was neither a member of the peer review committee nor in attendance at its meetings. A single justice of the Appeals Court, acting under G. L. c. 231, § 118, authorized an interlocutory appeal from the order in the Superior Court allowing Dr. Maloney to be deposed. We decide that the privilege created by G. L. c. 111, § 204(*a*), and further defined by § 205, bars a deposition of Dr. Maloney by the plaintiff.

1. *Facts.* After a course of negotiations through the spring and summer of 1994, Lahey employed Dr. Grande as chairman of the Department of Dermatology. The particular specialty that Dr. Grande brought to Lahey was in Mohs surgery, a method of treating skin cancer by surgically removing one microscopic layer of skin at a time. Dr. Grande came on board at Lahey in October, 1994. Six months later, in March, 1995, two physicians at Lahey, the defendants J. Lawrence Munson, M.D., and Brooke R. Seckel, M.D., each wrote a memorandum to the Lahey tissue committee criticizing the manner in which Dr. Grande cared for patients on whom he had operated. Following procedures laid out in Lahey's by-laws, the critique of the care given by Dr. Grande in nine specific cases was referred to the Lahey peer review committee. There were no other Mohs surgeons at Lahey, and the hospital, therefore, retained Dr. Maloney, a Mohs surgeon, to consult to the peer review committee in reviewing the cases in question. Dr. Maloney practices at the Hershey Medical Center in Pennsylvania.

---

[2]Other wrongs alleged were intentional interference with contractual relations and intentional infliction of emotional distress. Certain counts were aimed at individual, rather than all, defendants.

In connection with her consultation to Lahey, Dr. Maloney spoke with physicians at Lahey and reviewed the patient charts in the cases under review. She submitted a written report to the peer review committee, which thereafter issued its conclusion that Dr. Grande's care was up to the standards of his specialty. That was not the end of the matter. Dr. Grande was certain that the memoranda critical of him were salvos in an undeclared turf war launched by other skin cancer surgeons and plastic surgeons at Lahey. He resigned and brought this action. The deposition he desires to take of Dr. Maloney presumably is designed to explore whether she learned during her investigation that professional rivalry and conspiracy were behind the memoranda that triggered the peer review.

2. *Discussion.* Lahey looks to G. L. c. 111, §§ 204(*a*) and 205, as the source of the privilege that it says adheres to the information Dr. Maloney acquired in the course of her consultation to the Lahey peer review committee. The purpose and legislative history of §§ 204(*a*) and 205 were the subject of extended comment not long ago in *Carr* v. *Howard*, 426 Mass. 514, 517-522 (1998).[3] That purpose is to promote uninhibited investigation and expression of opinion in peer review proceedings. *Id.* at 518. See *Beth Israel Hosp. Assn.* v. *Board of Registration in Med.*, 401 Mass. 172, 182 (1987), in which the court said that the design of § 204(*a*) was "to foster aggressive critiquing of medical care by the provider's peers." With that purpose in mind, we turn to the statutory texts.

Section 204(*a*), so far as pertinent, provides:

"[T]he proceedings, reports and records of a medical peer review committee shall be confidential and shall not be subject to subpoena or discovery . . . ."

Section 204 was enacted by St. 1986, c. 351, § 9. The scope of what constitutes proceedings, reports and records of a medical peer review committee was defined a year later, expansively rather than narrowly, in a new § 205, added by St. 1987, c. 579, § 3.[4] Section 205(*b*) provides that:

"Information and records . . . which are necessary to the

---

[3]*Carr* v. *Howard* was published after the Superior Court judge made her ruling.

[4]An existing § 205 was renumbered § 206.

work product of medical peer review committees . . .
shall be deemed to be proceedings, reports or records of a
medical peer review committee for purposes of [§ 204]
. . . ."

Obviously the report of Dr. Maloney to the Lahey peer review
committee falls squarely within the privilege conferred by
§ 204(*a*), and that is not a subject of contention. The Superior
Court judge, however, differentiated such oral testimony as Dr.
Maloney might give because § 204(*a*) also provides:

> "[N]o person who was in attendance at a meeting of a
> medical peer review committee shall be permitted or
> required to testify in any such judicial or administrative
> proceeding . . . ."

Dr. Maloney did not attend any meetings of the Lahey peer
review committee and the judge reasoned that fact took her out
of the class of people whose testimony could not be obtained.
The purpose of the "no person . . . in attendance" clause in
§ 204(*a*) is to ensure that the confidentiality of peer review
proceedings will not be unveiled by summoning as witnesses
those who are peer review committee members and those who
appear before the committee to assist it in its inquiries.

As a consultant and reporter to the Lahey peer review com-
mittee, Dr. Maloney's activities fall into the category of
privilege defined by § 205, namely, "[i]nformation and records
. . . which are necessary to the work product of medical peer
review committees." Dr. Maloney's conversations, the informa-
tion she gathered, and her study of records were all to the end
of working up her report for the peer review committee. Under
§ 205, those conversations, information gathered, and study are
"proceedings" of a medical peer review committee and, as
such, are privileged under § 204(*a*).

All this is entirely consonant with the overarching statutory
purpose of promoting vigorous self-examination by hospitals
and like health care institutions. See *Beth Israel Hosp. Assn.* v.
*Board of Registration in Med.*, *supra*; *Carr* v. *Howard*, *supra*;
*Fowles* v. *Lingos*, 30 Mass. App. Ct. 435, 441 & n.8 (1991);
*Swatch* v. *Treat*, 41 Mass. App. Ct. 559, 562-563 (1996).
Hospitals would be discouraged from bringing in outside medi-
cal experts to assist in peer review if access to their testimony
in connection with their consultative efforts stripped away the

confidentiality of their consultative work and thereby of the peer review proceedings. Of course, peer review committees could guarantee the confidentiality of the work of a consultant by having the consultant attend the meetings of the peer review committee when the case on which the consultant has assisted is discussed, even if that meant dragging her or him in from Seattle or, less dramatically, Hershey, Pennsylvania. That would surely be a procrustean means to what we think the statute makes a self-evident end: that the opinions, memoranda, and reports that are the work product of a peer review committee remain confidential. There is little point to providing that a report to a peer review committee will be confidential if the investigative work of the author of the report is not. Confidentiality in that case would be only skin deep.

The order of the Superior Court judge dissolving her previous protective order against the deposition of Dr. Maloney is vacated and the protective order prohibiting the deposition of Dr. Maloney by the plaintiff is reinstated.

*So ordered.*