Gershengorn, J.
Plaintiff Francisco Pardo alleges breach of contract, wrongful and retaliatory discharge, employment discrimination, and intentional interference with contractual and advantageous relationships. Now before this Court is a motion for a protective order brought by Massachusetts General Hospital (“the Hospital”), Partners Healthcare System, Peter Slavin, Herman Suit, and Chiu-Chen Wang (collectively, “defendants”). Mass.R.Civ.P. 26(c). The issue presented is the privileged status, under G.L.c. 111, §§204-205 (1996 & Supp. 2001), of the transcript and certain other records of a Staff Review Committee that reviewed the propriety of actions taken by the Hospital against Pardo, prior to his bringing this case. For the following reasons, this Court DENIES defendants’ motion for protective order.

BACKGROUND

For purposes of this motion only, the relevant chronology of events is as follows.[2]
. Sometime in early January 1996, the Hospital’s General Executive Committee (“GEC”) met and deter *545 mined to recommend to the Board of Trustees (“the Board”) termination of Pardo’s clinical privileges. Slavin and Suit attended this meeting and participated in this decision; Suit, in his capacity as Department Chair and Chief of the Radiation Oncology Service, supervised Pardo and recommended the termination. The GEC did not invite Pardo to this meeting and conducted no independent investigation. The meeting lasted less than thirty minutes.
On January 26, 1996, the Board, acting on the GEC’s recommendation, notified Pardo that it had granted him a six-month, non-clinical appointment as an Assistant Radiation Oncologist. At the same time, the Board denied Pardo’s application for clinical privileges, effective January 10, 1996.
On June 30, 1996, the Board terminated Pardo’s remaining privileges and denied him further appointment. Harvard later terminated Pardo’s appointment to its faculty. Statutorily mandated reports concerning Pardo were also filed with the Board of Registration in Medicine and the National Practitioners’ Databank. See G.L.c. 111, §53B (1996 & Supp. 2001); 42 U.S.C. §11133 (1997); 45 C.F.R. §60.9 (2000).
Pursuant to the Hospital’s bylaws, Pardo appealed the Board’s decisions to a Staff Review Committee (“SRC"), which began its proceedings on October 22, 1996 and was open to the public. Pardo and the SRC were represented by counsel at this SRC proceeding. Those presiding considered witness testimony and documentary evidence from both sides. A transcript was made. At the conclusion of the SRC hearing, the parties submitted memoranda, and the SRC issued a report in February 1998, which it submitted to the Board. The SRC’s report recommended reversal of the Board’s prior decisions.
The Board ultimately adopted the SRC’s recommendation later in 1998, restored Pardo’s clinical privileges, and ordered retroactive reinstatement. This litigation followed.
At all relevant times, the Hospital operated pursuant to written bylaws (“the Bylaws”), which must by statute include certain provisions. See G.L.c. 111, §203 (1996 & Supp. 2001). Under the Bylaws, the Board governs the Hospital and has general control over its affairs, including appointments, reappointments, and the designation of privileges, which it makes on recommendation from the GEC. See Bylaws of the Professional Staff of the General Hospital, Article III [hereinafter Bylaws).
The Bylaws govern the conduct of doctors, such as Pardo, who have research and clinical privileges at the Hospital. According to Article V, §5.01, “(w)henever a Member of the Staff engages in conduct that is or may be detrimental to the quality of patient care or disruptive to hospital research or other operations, appropriate corrective action shall be initiated . . .’’by certain specified committees or the Chief Executive Officer. Chiefs of Service, such as Suit, may recommend to the GEC “the termination of the appointment, denial of reappointment, reduction in rank, or the termination of all privileges of any Staff Member within his or her service.” Id. §5.03. In these cases, the GEC has thirty days to review the Chiefs recommendation before forwarding its own recommendation to the Trustees. Id. During this review, the GEC may invite the staff member to appear. Id.
Under the Bylaws, staff members, such as Pardo, who are the subject of certain adverse actions may have those actions reviewed by a Staff Review Committee. Id. §5.06.1. Each SRC consists of five members , two of whom have the same rank as the aggrieved member and none of whom were actively involved in formulating the GEC’s initial recommendation to the Board. Id. §5.06.2(c). The SRC has discretion to determine whether its meeting shall be open or closed to witnesses and spectators. Id. §5.06.2(d). The aggrieved member and the Chief of Service or other adverse party may also be represented by counsel and can offer documentary evidence and call and question witnesses. Id. All witnesses must testify under oath and be subject to cross-examination. Id. Although not bound by any codified Rules of Evidence, the SRC “shall admit and give probative effect to only such evidence as reasonable persons are accustomed to rely on in the conduct of serious affairs ...” Id. Moreover, each SRC shall commission a transcript of its proceedings and make it available to the aggrieved member without charge. Id. The SRC has thirty days to make its decision once its proceedings have closed. Id. §5.06.2(e). Further review to a Trustees’ Committee comprised of members of the Board is available. Id. §5.06.2(1). The Trustees’ Committee may, but need not, hold a formal hearing in the same manner as the SRC.
The Bylaws define which of the Hospital’s committees are “medical peer review committees,” including:
the GEC, the various committees of the GEC, . . . any Staff Review Committee and all other committees, agents of such committees or individuals charged with any responsibility for (a) the evaluation or improvement of the qualify of health care rendered by health care providers, (b) the determination whether health care services were performed in compliance with the applicable standards of care, (c) the determination whether the cost of health care services rendered were performed in compliance with the applicable standards of care, (d) the determination whether the cost of health care services rendered was considered reasonable by the providers of health services in the area, (e) the determination whether the actions of a provider call into question his or her fitness to provide health care services, or (f) the evaluation and assistance of providers impaired or allegedly impaired by reason *546 of alcohol, drugs, physical disability, mental instability or otherwise.
Bylaws, Article VI, §6.05.4(a) (emphasis added). The question for this Court is whether the SRC also fits into the statutory definition of a “medical peer review committee” in G.L.c. Ill, §1 (1996 & Supp. 2001). If so, the “proceedings, reports and records [of the SRC, including the transcript,]. . . shall be confidential and . . . shall . . . not be . . . introduced into evidence ...” G.L.c. Ill, §204(a). See also Bylaws, Article VI, §6.05.4(b).
According to an affidavit from Partners Healthcare Systems’ General Counsel, Pardo’s SRC proceedings focused only on “issues [of] [sic] [his] clinical competence, ability to get along with others and professional judgment.” Moreover, an affidavit from an officer at the. Hospital asserts that “the transcript and records of [an SRC] are necessary to comply with the risk management and quality assurance programs established by the Board and are necessary to the work product of the Committee.”
At various times after the conclusion of his SRC hearings, defendants provided Pardo and his counsel with certain documents, including the aforementioned transcript of his SRC proceedings. Pardo and his counsel agreed to use these documents under the following conditions: (1) that they remain in the custody of Pardo’s counsel; (2) that they are not copied; (3) that they are returned to the Hospital at the conclusion of Pardo’s SRC process; and (4) that they are not provided to any other person or used for any purpose or proceeding besides Pardo’s SRC proceedings. In correspondence outlining these conditions, Pardo referred to his SRC proceedings as “peer review. ”
Because Pardo and his counsel now have access to his SRC transcript, they wish to question witnesses who appeared before the SRC about their testimony. Specifically, Pardo wishes to probe the alleged inconsistencies he has since discovered, to prove the bias and bad faith relevant to his claims of wrongful and retaliatory discharge, employment discrimination, and intentional interference with contractual and advantageous relationships. During this litigation, Pardo has also offered to make these documents available to Harvard, who was not a party to his SRC or any other proceeding at the Hospital. Pardo’s general position is that (1) his SRC transcripts and certain other records are not privileged pursuant to G.L.c. 111, §203; and (2) an affidavit setting forth the existence of inconsistencies in depositions and discovery, along with the allegations in his second amended complaint, are sufficient indicia of bad faith to pierce the peer review privilege and to allow use of his SRC transcript and other documents as evidence in this case.[3] See G.L.c. 111, §§203(c) & 204(b)-(c); G.L.c. 231, §85N (2000).

DISCUSSION

This Court must decide whether the transcript and certain other documents of Pardo’s SRC are protected by the peer review privilege contained in G.L.c. 111, §§204-205. “The medical profession has historically regulated itself through internal hospital disciplinary proceedings . . .” Carr v. Howard; New England Deaconess Hosp. Corp., 426 Mass. 514, 517 (1998). The purpose of the privilege in G.L.c. 111, §§204-205 is therefore “to foster aggressive critiquing of medical care by the provider’s peers.” Beth Israel Hosp. Ass’n v. Board of Registration in Med., 401 Mass. 172, 182 (1987). Such aggressive critiquing occurs in peer review committees; ”[t]o promote candor and confidentiality in the review process, G.L.c. 111, §204(a) provides that: ‘[T]he proceedings, reports and records of a medical peer review committee shall be confidential and shall not be subject to subpoena or discovery, or introduced into evidence, in any judicial or administrative proceeding . . .’ ” Carr, 426 Mass. at 518 (emphasis added). Accordingly, “medical peer review committees” are the center of this statutory privilege. Id. at 518. ”[T]o assert the privilege in §204 . . ., a party would have to submit evidence showing that, under §204(b), the ‘documents, incident reports or records’ sought were . . . themselves ‘proceedings, reports and records’ of a peer review committee under §204(a).” Id. at 522 n.7.
General Laws, Chapter 111, Section 1 defines a “medical peer review committee” as:
a committee of a state or local professional society of health care providers . . . provided the medical staff operates pursuant to written bylaws that have been approved by the governing board of the hospital which committee has as its function the evaluation or improvement of the quality of health care rendered by providers of health care services, the determination of whether health care services were performed in compliance with the applicable standards of care, the determination whether the cost of health care services were performed in compliance with the applicable standards of care, determination whether the cost of the health care services rendered was considered reasonable by the providers of health care in the area, the determination of whether a health care provider’s actions call into question such health care provider’s fitness to provide health care services, or the evaluation and assistance of health care providers impaired or allegedly impaired by reason of alcohol, drugs, physical disability, mental instability or otherwise; provided, however, that for purposes of [§§203-204], a non-profit corporation, the sole voting member of which is a professional society having as members persons who are licensed to practice medicine, shall be considered a medical peer review committee; provided, further, that its primary purpose is the evaluation and assistance of health care providers impaired or allegedly impaired by reason of alcohol, drugs, physical disability, mental instability or otherwise.
This language is substantially mirrored in the broad definition quoted above from the Hospital’s bylaws. *547 See Bylaws, Article VI, §6.05.4(a). In Swatch v. Treat, 41 Mass.App.Ct. 559, 562 (1996), the Appeals Court ruled that a National Association of Social Workers (“NASW”) grievance panel was a “medical peer review committee,” on its way to holding that (1) the National Association of Social Workers (“NASW”) had sufficient interest in the confidentiality of its report such that it could intervene in a malpractice lawsuit arising out of its decision; and (2) expungement of copies of NASW’s report in Superior Court records was warranted in light of that interest. Key to the Appeals Court’s ruling that the NASW grievance panel was a “medical peer review committee,” under G.L.c. 111, §§1, was "the purposeful exclusion of the trappings of legal process” from the NASW proceeding, as exemplified by the closed nature of the proceeding, its focus on education and improvement as opposed to punishment, and the insistence on confidentiality (including a confidentiality agreement beyond that embodied in the law). Id. On the basis of these factors, the Appeals Court concluded that the NASW meeting was not adversarial in nature' and thus fell within the definition of a “medical peer review committee” in G.L.c. 111, § 1[4] Id.
Here, evaluation of the factors suggested by the Appeals Court in Swatch leads to the opposite conclusion; the elements of legal process are evident in the formalities required in the Hospital’s SRC proceedings. The presiding members of the SRC had the power to decide if their meetings should be open or closed to the public and witnesses. Bylaws, Article V, §5.06.2(d). Almost by definition an open meeting cannot be privileged as peer review. Moreover, the SRC heard from witnesses testifying under oath and subject to cross-examination. Id. Even more fundamentally, both Pardo and the SRC were represented by counsel. Id. Thus, the reasoning of the Appeals Court in Swatch demonstrates that the Hospital’s SRC is not a “medical peer review committee” under G.L.c. 111, §1.
This result is confirmed by the text of G.L.c. 111, §203, which treats, inter alia, how the Hospital must deal with reports of misconduct by its health care providers, such as Pardo. This section also provides the legal basis under which the Hospital afforded Pardo the elements of legal process described above. Section 203 states, in pertinent part:
§203 Provider misconduct; medical peer review
(a) The by-laws of every licensed or public hospital and the by-laws of all medical staffs shall contain provisions for reporting conduct by a health care provider that indicates incompetency in his specialty or conduct that might be inconsistent with or harmful to good patient care or safety. Such bylaws shall direct a procedure for investigation, review and resolution of such reports.
(b) Whenever, following review by a medical peer review committee of a licensed or public hospital determination is reached that a health care provider’s privileges should be suspended in the best interests of patient care, such committee shall immediately forward the recommendation to the executive committee of the medical staff and the institution’s board of trustees for action. A provider whose privileges are suspended shall be entitled to notice and a prompt hearing following suspension in accordance with the institutions medical staff by-laws.
(c)An individual. . . providing information, opinion, counsel or services to a medical peer review committee, or participation in the procedures required by this section, shall not be liable in a suit for damages by reason of having furnished such information, opinion, counsel or services or by reason of such participation, provided, that such individual or institution acted in good faith and with a reasonable belief that said actions were warranted in connection with or in furtherance of the function of said committee or the procedures required by this section.
(Emphases added.) Strikingly, the language of this section, while providing for mandatory resolution, investigation, and review of misconduct reports, directs that, in cases where privileges are suspended, such review must go beyond that done in “medical peer review committees,” extending this examination to separate proceedings such as the SRC here, which are therefore unprotected by the privilege associated with “medical peer review committees.” Specifically, such review occurs in the “prompt hearing following suspension,” G.L.c. 111, §203(b), which is “the procedure! ) required by this section.” Id. §203(c). By contrast, the language in G.L.c. 111, §§204 and 205 only provides confidentiality to documents and testimony associated with “medical peer review committees. ” Application of these words does not lead to an absurd result; hence, this Court is constrained to follow the statute’s plain language. See White v. Boston, 428 Mass. 250, 253, (1998). Moreover, a holding that the Hospital’s SRC meetings are “medical peer review committees” within G.L.c. 111, § 1 and therefore of the same order as those committees would render superfluous the explicit language of G.L.c. 111, §203(b) and (c). Casa Loma, Inc. v. Alcoholic Beverages Control Comm’n, 377 Mass. 231, 234 (1979). From these points, it appears to this Court that (1) G.L.c. 111, §203 prescribes proceedings apart from “medical peer review committees”; and (2) that these proceedings — the SRC proceedings in this case — have a separate purpose — to extend the possibility of a fair review to the aggrieved health care provider.
Defendants rely on an affidavit from Partners Healthcare Systems’ General Counsel, stating that Pardo’s SRC proceedings focused only on “issues [of] [sic] [his] clinical competence, ability to get along with others and professional judgment.”[5] Defendants also rely on the sworn assertion of one of the Hospital’s officers that ”[t]he transcript and records of [an SRC] are necessary to comply with the risk management and qualify assurance programs established by the Board and are necessary to the work product of the commit *548 tee[,]” as required for protection under G.L.c. 111, §205(b). See Carr, 426 Mass. at 522-23. Doubtless all decision-making in a hospital ultimately devolves into a consideration of “the evaluation and improvement of the quality of health care rendered,” as the broad definition of “medical peer review committees” in the Hospital’s bylaws additionally indicates. Bylaws, Article VI, §6.05.4(a). However, defendants’ reasoning minimizes the importance of the fair review proceedings available to the aggrieved health care provider after the conclusion of “medical peer review committee” proceedings. Both of these assertions therefore neglect the separate function served by the SRC review process and the legal protections it provides to the aggrieved health care-provider. One of these protections, moreover, is the preparation of a transcript, which the SRC must provide to the aggrieved staff member. See Bylaws, Article V, §5.06.2(d)(8).
Because the SRC must provide this transcript under the Hospital’s bylaws, id., defendants also cannot rely on their subsequent correspondence with Pardo, within which he referred to the SRC proceedings as “peer review" and apparently agreed to additional conditions. The new conditions to which Pardo and his counsel agreed apply only insofar as they are consistent with the Hospital’s bylaws. Compare Swatch, 41 Mass.App.Ct. at 563-64 (finding additional contractual interest in confidentiality that NASW — the independent review panel and not one of the original parties to the malpractice case— could enforce through intervention). Moreover, Pardo’s references to his SRC proceedings as “peer review” are not a concession in light of his separate entitlement to the transcript and separate review proceedings under the Bylaws and G.L.c. Ill, §203.
In addition to the evidence concerning the Hospital’s SRC hearings, defendants also cite an unpublished trial court decision from another jurisdiction, St. Mary’s Hospital v. Brackett, 28 Conn. L. Rptr. 289, 2000 Conn. Super. LEXIS 2617 (Conn. Super. Ct. 2000), in support of their conclusion that Pardo’s SRC proceeding was a “medical peer review committee” under G.L.c. 111, §1. In that case, however, the Connecticut Superior Court interpreted that state’s peer review privilege statute, which uses different terms and definitions and has a different approach from the Massachusetts peer review statutes. As another state court has noted, “[Although nearly every state has some form of statutory privilege for medical peer review, it appears that no two statutes, or courts’ interpretations of them, are alike.” Trinity Medical Center, Inc. v. Holum, 544 N.W.2d 148, 153 (N.D. 1996). The holding in St. Mary’s Hospital is not binding on this Court, and this decision interprets only the statutes comprising the Massachusetts peer review privilege.
Lastly, defendants press this Court not to underestimate the importance of the peer review privilege, citing the Appeals Court’s recent decision in Grande v. Lahey Clinic Hosp., Inc., 49 Mass.App.Ct. 77 (2000). In Grande, the Appeals Court held that the testimony and report of a doctor, who had been retained as a consultant to aid in a medical peer review committee’s investigation into another doctor’s work, were privileged under G.L.c. 111, §205(b) because it was “necessary to the work product of the proceedings.” Id. at 80. In addition, the court noted that these materials were protected under G.L.c. 111, §204(a), as "proceedings ... of a medical peer review committee.” Id. Defendants point to the Appeals Court’s statement, “Hospitals would be discouraged from bringing in outside medical experts to assist in peer review if access to their testimony in connection with their consultative efforts stripped away the confidentiality of their consultative work and thereby of the peer review proceedings.” Id. Along these lines, defendants argue that participation by doctors participating in both SRC and GEC meetings would be chilled, were this Court to hold that the transcript and certain other records of Pardo’s SRC proceeding are not privileged. Here, though, this Court deals with different materials and a different set of procedures, both of which also serve a different function.
Pardo’s right to an SRC review of the Hospital’s decision to terminate his privileges was statutorily mandated by G.L.c. 111, §203, and, pursuant to this direction, the Hospital’s bylaws required that he be provided with a transcript as one of many legal protections. The due process protections specified in G.L.c. 111, §203 and elaborated in the Bylaws afford aggrieved health care providers, such as Pardo, the opportunity to have a fair and impartial review of major Hospital decisions affecting them. Pardo’s entitlement to a fair review therefore exists apart from the privileged peer review decisions being examined. For these reasons, this Court must DENY defendants’ motion for a protective order.

ORDER

For the foregoing reasons, the court hereby DENIES the motion for a protective order filed by defendants Massachusetts General Hospital, Partners Healthcare System, Peter Slavin, Herman Suit, and Chiu-Chen Wang.

 The parties have attempted to set forth the background facts in their briefs, but do so by argument and conclusoiy assertions. The following material is therefore culled from a variety of different sources.

 This Court need not address the parties’ arguments concerning whether the mere allegation of bad faith and subsequent proof of inconsistencies in witness testimony are sufficient to pierce the peer review privilege.

 Social workers are included in the definition of “health care provider” found in G.L.c. Ill, §1. Swatch, 41 Mass.App.Ct. at 561.

 Pardo disputes this version of his SRC hearing.