Borenstein, J.
INTRODUCTION
The plaintiffs, Dr. Steven Miller (“Miller”) and Physicians Emergency & Medical Care, P.C. (“PEMC”) sued Dr. Miller’s former employer, Milton Hospital & Medical Center, Inc. (“Hospital”), its president, George Geary (“Geary”), and its chief of surgery, Dr. Amitabha Roy (“Roy”). The basis of Miller’s suit was the Hospital’s failure to renew a contract for services entered into by Miller, as president of PEMC, and the Hospital.
The court (Brady, J.) allowed the defendants’ motions in limine to exclude certain documents and granted summary judgment in the defendants’ favor. The plaintiffs appealed the court’s decision.
The Appeals Court vacated the summary judgment ruling on counts III, XI, XII and XIII of the plaintiffs complaint, concluding that the record below did not support the court’s decision to exclude a letter from Roy to Geary as a record or report of a “medical peer review committee” under G.L.c. Ill, §§204-05. The Appeals Court ruled that the letter, if admitted, would present material issues of fact precluding summary judgment. The Court remanded the case for further proceedings with regard to the letter at issue.
On December 15, 2003, this court held a hearing during which both parties had the opportunity to present testimony and other evidence.
FINDINGS OF FACT
In 1986, Miller, on behalf of PEMC, entered into a contract with the Hospital under which PEMC was to provide emergency medical services to the hospital. Under the contract, Miller would assume the position as Chief of Emergency Medicine of the Hospital. The contract stated a term of three years but was subject to automatic renewal for one-year periods thereafter unless terminated by either party with six months notice.
Defendant Roy became the hospital’s Chief of Surgery in 1987. In 1989, a disagreement developed between Roy and Miller regarding who would provide follow-up surgical care for patients treated in the emergency room. This difference of opinion was not motivated by any incident of patient care or lack thereof. Roy’s position was that all surgical patients without a primary care physician who were seen in the emergency room should be referred to the hospital’s surgical department for follow-up care.
The disagreement between Roy and Miller culminated in a joint meeting of the Department of Emergency Medicine and the Department of Surgery, held on October 26, 1989. The joint meeting was called by the Executive Committee to resolve several disputes between the surgical and emergency medicine departments. The meeting was scheduled jointly by Miller and Roy. On October 10, 1989, Roy distributed a memorandum to the Department of Surgery staff notifying them of a mandatory joint meeting to be held on October 26, 1989, following the monthly meeting of the surgical department. Roy’s memorandum does not refer to the joint meeting as a “peer review committee.” This was not a regularly scheduled meeting.
The joint meeting began at approximately 6:00 p.m., following the regular monthly meeting of the Department of Surgery and lasted about two hours. Both Miller and Roy attended the meeting and *459 prepared their own minutes of the meeting. The meeting never progressed beyond the debate about which departments would provide follow-up care to patients admitted to the emergency room who might require surgical treatment. Both Roy and Miller testified that the meeting did not include any discussion of individual patients, review of patient medical records, nor did it address a particular incident or occurrence. There was no discussion at the meeting of the clinical work performed by one department versus the other, or by one physician or another. Indeed, in Dr. Roy’s own minutes to the Department of Surgery about the meeting, he stated that “. . . some issues of quality of care . . . were never discussed as the time was very late . . .”
The purpose of and what actually occurred at the meeting was a discussion of how referrals would be handled for patients who came to the emergency room without having a private physician of their own. The origins of this disagreement was the frustration felt by physicians in the Department of Surgery because they were not receiving these patient referrals. This was an administrative and business meeting, and that is in part reflected in the letter in question. This was not a meeting to discuss patient care. The meeting was terminated without resolution of the disagreement.
On December 12, 1989, Roy sent Geary a letter regarding the October 26 joint meeting.[1] The letter was received by Geary on January 10, 1990. On October 1, 1990, Geary sent Miller a letter advising him that his contract with the hospital would terminate without renewal on March 31, 1991.
The functions of the surgery and emergency departments are established by the by-laws of the hospital’s medical staff in effect on October 26, 1989. Section 4.3 of the by-laws assigns to each clinical department the responsibility to “evaluate medical care, by conducting a primary retrospective review of completed records of discharged patients and other pertinent Departmental sources of medical information relating to patient care” and to “meet as a separate group to review and analyze on a peer-group basis the clinical work of the Department.” Each department is required to meet monthly “to review and evaluate the clinical work of the Department and to discuss any other matters concerning the Department.” Both parties presented testimony that the function of each hospital department includes peer review and that meetings of each department often covered both clinical patient care matters as well as business and administrative matters unrelated to peer review.
DISCUSSION
A. The Peer Review Statute, G.L.c. 111, §§204-05
The peer review privilege was designed by the legislature to promote uninhibited investigation and exchange of opinion in the medical peer review context. Carr v. Howard, 426 Mass. 514, 518 (1998). In order to “foster aggressive critiquing of medical care by the provider’s peers,” Beth Israel Hosp. Ass’n v. Bd. Of Registration in Med., 401 Mass. 172, 182 (1987), the statutes provide that “proceedings, reports and records of a medical peer review committee shall be confidential and shall not be subject to subpoena or discovery.” G.L.c. 111, §204(a). The legislature outlines some of the material that is privileged, limiting the privilege to “information and records” that are “necessary to the work product of the peer review committees.” G.L.c. 111, §205(b).
General Laws, chapter 111, Section 1 defines a “medical peer review committee” as:
A committee of a state or local professional society of health care providers, including ... a medical staff of a licensed hospital... provided the medical staff operates pursuant to written bylaws that have been approved by the governing board of the hospital .. . which committee has as its function the evaluation or improvement of the quality of health care rendered by providers of health care services, the determination whether health care services were performed in compliance with the applicable standards of care, the determination whether the cost of health care services were performed in compliance with the applicable standards of care, determination whether the cost of the health care services rendered was considered reasonable by the providers of health services in the area, the determination of whether a health care provider’s actions call into question such health care provider’s fitness to provide health care services, or the evaluation and assistance of health care providers impaired or allegedly impaired by reason of alcohol, drugs, physical disability, mental instability or otherwise.
A peer review committee should serve the “overarching statutory purpose of promoting vigorous self-examination by hospitals.” Grande v. Lahey Clinic Hosp., Inc., 49 Mass.App.Ct. 77, 80 (2000). In Swatch v. Treat, 41 Mass.App.Ct. 559, 562 (1996), the Appeals Court ruled that a National Association of Social Workers medical malpractice grievance panel was a “medical peer review committee” under G.L.c. 111, § 1. In reaching its determination, the court looked to “the purposeful exclusion of the trappings of legal process,” such as the closed nature of the proceeding, its focus on education and improvement as opposed to punishment, and the insistence on confidentiality.
In Pardo v. Massachusetts General Hosp., 13 Mass. L. Rptr. 544 (2001), the court (Gershengorn, J.), looked to the appellate court’s reasoning in Swatch to determine that a hospital review committee meeting was not a peer review committee. In Pardo, the plaintiff appealed the termination of his privileges to the Staff Review Committee (“SRC”), which then held a meeting open to the public. At the meeting, both the plaintiff and the SRC were represented by counsel, there was *460 evidence presented and counsel had the opportunity for cross-examination.
B. Standard
This court must decide whether the letter from Roy to Geary is protected by the peer review privilege set forth in G.L.c. 111, §§204-05. The principal focus is whether the letter was created by, for, or was otherwise the result of a “medical peer review committee,” as defined under G.L.c. 111, §1.
To determine whether information sought is within the peer review privilege, the court must “first determine whether the records for which the privilege is claimed are on their face such as clearly fall within the privilege ... If the question is in doubt on the face of the materials, the court should then consider the evidence proffered by the party asserting the privilege.” Carr, 426 Mass, at 529. When the information or records do not fall clearly within the privilege, the burden is on the party asserting the privilege to “produce evidence tending to show (1) that the information and records sought are ‘necessary to comply’ with risk management and quality assurance programs ... and (2) that the information and records ‘are necessary to the work product of medical peer review committees.’ ” Id. at 522-23. In its opinion in this case, the Court of Appeals noted that whether the “privilege applies turns on the way in which a document was created and the purpose for which it was used, not on its content.” Miller v. Milton Hosp. & Medical Ass’n, 54 Mass.App.Ct. 495, 499 (2002).
C. The October 26, 1989 Joint Meeting and Roy’s December 12, 1989 Letter
The defendants contend that the joint meeting functioned as a peer review committee to disuss the best way to provide follow-up care to emergency room patients that required surgical treatment. They argue that Roy’s letter was a report of the peer review committee, sent to advise Geary of the status of the disagreement between Roy and Miller.
The plaintiff alleges that the joint meeting was not a peer review committee, but a business meeting to address Roy and Miller’s disagreement regarding Roy’s request for follow-up care referrals. Miller contends that Roy’s letter to Geary was not a report of a peer review committee meeting, but a threat to withhold back-up surgical coverage for the emergency department unless Miller complied with the request for referrals.
Roy testified that the purpose of the joint meeting was to address qualily assurance issues and patient care problems arising from post-surgical care provided by emergency room physicians. However, Roy and Miller’s individual minutes of the meeting are in accord that the disagreement regarding which department should provide follow-up care for surgical patients was the only topic discussed. Neither Roy’s minutes, nor his subsequent letter to Geary reflect any discussion of quality of care issues at the joint meeting.[2]
The defendants direct the court’s attention to Miller’s meeting minutes, which bear the heading, “CONFIDENTIAL — For Quality Assurance Purposes Only,” as evidence of the peer review purpose of the meeting. However, words on a page cannot distract from and are not solely determinative of what actually occurred at the meeting, and whether the letter in question was produced by and in accordance with the privileges of a peer review committee. The defendants testified that the joint meeting focused entirely on the disagreement over follow-up care between the Emergency Medicine and the Surgeiy Departments, and that no quality of care issues were discussed. The heading on Miller’s meeting minutes does not cloak what was actually a business meeting with the status of a peer review committee.
The testimony of both parties revealed that no patient records were reviewed at the joint meeting, nor were any individual patients discussed. Although patient care may have been addressed in a very broad manner, no discussion of patient care reached the level of peer review. Any discussion of patient care was connected to the administrative issues regarding who would provide follow-up care. Nor were the services provided by any physician discussed. This was not a regular meeting, consistent with the by-laws and the practices at the hospital to hold monthly meetings to address quality assurance issues.
The letter Roy sent to Geary does not refer to the joint meeting as a peer review committee. Roy was not required by the hospital by-laws to send any report of the meeting to Geary. Of his own initiative, Roy wrote the letter in order to address his unresolved disagreement with Miller. Furthermore, Roy sent the letter to Geary on December 12th, approximately six weeks after the meeting occurred. If Roy’s concern about the follow-up care was about the quality of care patients were receiving, he would have followed up with Geary in a more immediate manner. Indeed, the purpose of this out of the ordinary meeting, what occurred at it, the follow-up letter, and all of the other evidence and circumstances point not to a peer review committee. Rather, everything points decidedly to a business meeting.
This court finds as a matter of fact and rules as a matter of law that the joint meeting was not a peer review committee meeting under G.L.c. 111, §1. The defendant has failed to demonstrate that the purpose of the joint meeting of the surgery and emergency medicine departments on October 16, 1989, was for peer review. The meeting did not focus on the quality of care provided to patients; rather, its focus was on who provided the care. The purpose of the joint meeting was to address the administrative issue of which department would receive referrals for follow-up care of surgical patients treated in the emergency room.
*461 The document in question, the subsequent letter from Roy to Geary, therefore, is not a report or document of a peer review committee and will not be excluded from evidence.
ORDER
For the foregoing reasons, the court hereby DENIES the defendants’ motion to exclude from evidence at trial the December 12, 1989 letter from defendant Roy to defendant Geary.

The following is the relevant text of the letter.
We have had our Surgical meeting in the month of October which involved a common meeting of the General Surgeons, Orthopedic Surgeons, Plastic Surgeons, that is those who cover the Emergency Room as back-up surgeons, and the Staff of the Emergency Room. In the combined meeting of the Surgical Staff and the Emergency Room we primarily discussed the problems between the General Surgeons and the Emergency Room physicians. The problems that the General Surgeons faced were pointed out to Miller and they are as follows:
1. The follow-up of the surgical patients to the Emergency Room.
2. Transfer of patients out of the Emergency Room).]
3. The quality of care issue.
In the discussion of the follow-up of the surgical patients, it was the unanimous decision of the Surgeons that they wanted 100% follow-up in their offices of all surgical patients who come to the E.R. who do not have any private physicians. However, Miller did not answer satisfactorily to this point and after deliberating one hour, we could not go beyond this point and at that point I dissolved the meeting.
Talking then to the Surgeons, they felt that if the practice continues then they probably will withdraw back-up coverage of surgery in the Emergency Room.
Even though I don’t see any immediate problem, however, I must point this out to you that there may come a time when the Emergency Room, and in turn the Hospital, may not have any Surgical back-up coverage unless Miller wants to change his mind and listen to, and abide by the requests of the Surgeons who covered the Emergency Room as back-up surgeons.

Roy’s minutes of the joint meeting list the three problems to be discussed as: “1. Follow-up of surgical patients coming to the Emergency Room who do not have private physicians. 2. Transfer of patients. 3. Some issues of quality care.” The fact that follow-up of surgical patients is listed as a separate issue from quality of care indicates that Roy did not consider the follow-up issue to fall under the umbrella of quality of care.