Houston, Julian T., J.
This is a defamation action against the defendant, Dennis D. Keefe, CEO of Cambridge Health Alliance (“CHA”) by the plaintiff, Edward J. Dunn, a physician at CHA. The alleged defamatory remarks occurred during a medical peer review committee meeting. The plaintiff alleges liability pursuant to G.L.c. 231, §85N. The defendant moves for a protective order based on the statutory privileges of G.L.c. Ill, §§203-05. For the following reasons, the protective order is allowed in part.

BACKGROUND

The plaintiff is a cardiothoracic surgeon hired by CHA in August of 2001. Shortly after CHA hired Dunn, the CEO of CHA resigned and defendant Keefe served as acting CEO. According to Dunn, both Keefe and Dunn sought the position of permanent CEO at CHA.
On January 14, 2003 at a Medical Executive Committee, the defendant who was acting as CEO, allegedly made two defamatory statements. According to Dunn, the defendant stated that the Massachusetts Board of Registration was investigating Dr. Dunn and that it would be taking action against him and that CHA’s Board of Trustees was concerned about Dr. Dunn’s clinical competency. The plaintiff further alleges that both statements were false and without any basis.

DISCUSSION

The defendant alleges that G.L.c. Ill, §204 prevents discovery in this case because the statements arose in the context of medical peer review committee proceedings. The statute provides in relevant part:
(a) Except as otherwise provided in this section, the proceedings, reports and records of a medical peer review . . . shall not be subject to subpoena or discovery or introduced into evidence in any judicial or administrative proceeding . . . and no person who was in attendance at a meeting of a medical peer review committee shall be permitted or re *708 quired to testify in any such judicial or administrative proceeding.
(c) A person who testifies before such committee or who is a member of such committee shall not be prevented from testifying as to matters known to such person independent of the committee’s proceedings, provided that, except in a proceeding against a witness to establish a cause of action pursuant to section eighty-five N of chapter two hundred and thirty-one, neither the witness nor members of the committee may be questioned regarding the witness’s testimony before such a committee, and further provided that committee members may not be questioned in any proceeding about the identity of any person furnishing information or opinions to the committee, opinions formed by them as a result of such committee proceedings or about the deliberations of such a committee.
(Emphasis added). General Laws Chapter 231 Section 85N in turn insulates members of a committee of a medical staff from liability as long as the member “acts in good faith and in the reasonable belief that based on all of the facts the action or inaction on his part was warranted.” In this case, the plaintiff asserts that the two statements were made in bad faith and the defendant is therefore liable. Without discovery, however, the plaintiff cannot establish whether in fact the statements were made and if so, the basis of the remarks.
The peer review privilege, like all privileges, must be construed in light of the bedrock principle that the law is entitled to eveiy man’s evidence.[1] United States v. Nixon, 418 U.S. 683, 709 (1974). In Massachusetts, privileges are exceptions to the general dufy on all people to testify," Commonwealth v. Corsetti, 387 Mass. 1, 5 (1982), and must be strictly construed. Three Juveniles v. Commonwealth, 390 Mass. 357,359 (1983). As such, privileges must be accepted only to the extent that the exclusion has a public good transcending the predominant principle of searching for the truth. Id. at 360.
The legislature enacted the peer privilege in order to foster aggressive critiquing of medical care by the provider’s peers. Beth Israel Hospital Association v. Board of Registration of Medicine, 401 Mass. 172, 182 (1987). By providing confidentialiiy to proceedings that promote active self-scrutiny, the legislature intended to assist physicians and health care institutions in their efforts to identify problems in practice before they occur and to put in place preventative measures designed to minimize substandard practice. 243 Code of Mass. Regs. §3.01 (1993). Though “peer review committees have a profound interest in the sanctity and protection of the confidentiality under which they operate,” Swatch v. Treat, 41 Mass.App.Ct. 559, 563 (1996), the legislature specifically carved out an exception for claims arising out of G.L.c. 231, §85N which allows liability against a member of a medical committee when the member acts in bad faith.
In this case, the essence of the plaintiffs claims is that the statements were made in bad faith. The nature and tone of the allegations support an inference that the remarks were not necessarily spoken in the context of “aggressive critiquing” to serve the public good but could have been spoken to serve a more personal purpose of Keefe. As such, it is not clear whether the information sought is even within the scope of the peer review privilege. In the face of a discovery request that leaves doubt, the court should then consider the evidence proffered by the party asserting the privilege. Carr v. Howard, 426 Mass. 514, 529 (1998). To that end, the defendants do not offer any evidence but merely allege that the plaintiff cannot establish any genuine issue of material fact to imply Mr. Keefe acted other than in good faith. Though the plaintiff does not bear such a burden, Dunn sufficiently alleges that the defendant had an ulterior motive in making the statements and that the statements were baseless. Moreover, preventing discovery in these circumstances would essentially bar Dunn from stating a claim under G.L.c. 231, §85N despite the clear legislative intent to preserve such a claim.
In effect, the privilege does not apply to information regarding the circumstances of the alleged defamatory statements but does apply to all other matters raised in the January 14, 2003 meeting. The defendant’s motion for a protective order is allowed to the extent that matters unrelated to the defamatory statements are privileged. The plaintiffs discovery is therefore limited to only matters that concern the alleged defamatory statements and whether such statements were made in bad faith.

ORDER

It is hereby ORDERED that the defendant’s motion for a protective order is ALLOWED to the extent that matters unrelated to the defamatory statements are excluded from discovery.

In Nixon, a unanimous Supreme Court emphasized:
The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.